670 A.2d 616

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald ROBINSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 8, 1994.

Decided Dec. 12, 1995.

---

James J. Schwartz, Philadelphia, for appellant.

Robert E. Colville, District Attorney, Kemal A. Mericli, Assistant District Attorney, James R. Gilmore, Assistant District Attorney, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### Opinion Announcing the Judgment of the Court

CASTILLE, Justice.

Appellant claims he is entitled to a new trial because the trial court: (1) failed to give an adequate cautionary instruction after the arresting officer testified that appellant was initially "hesitant as far as cooperating" prior to his statement to police, and (2) erred in denying appellant's motion for mistrial after one of appellant's co-conspirators non-responsively testified that he and appellant's other co-conspirators all pleaded guilty to the same offenses for which appellant was being tried. For the following reasons, we hold that a new trial is not warranted and affirm the order of the Superior Court affirming appellant's judgment of sentence.

A summary of the evidence giving rise to appellant's criminal convictions, which included the testimony of numerous victims, eyewitnesses, police officers and appellant's statements to the police, established that on September 5, 1989, a spree of burglaries and attempted burglaries occurred in

McCandless Township and in neighboring Pine Township. The first Commonwealth complaining witness testified that at approximately noon, a black car backed into her driveway and a white male, not appellant, exited the vehicle and banged on her front door calling for "Jim." The witness described the male as white with brownish, longer styled and feathered back hair, wearing a button-down shirt with rolled up sleeves. When the man moved away from the door, the witness went to a room located directly above the driveway and observed that the black car was a later model car and that the door was open with a second person's arm sticking out of the car. The witness could not see the second person's face but observed that the person wore a watch and a short-sleeved shirt. The witness then heard a third person walking on the driveway stones and believed it was another male who had exited the vehicle; thereafter, the first male began knocking on her front door again. The complainant was alone in the house and was caring for a nine-month-old baby and was understandably fearful to answer the door.

After ten to fifteen minutes passed, the car, with at least three people in the vehicle, sped off at a high rate of speed, at which time the witness went outside and discovered that someone had urinated on her front stoop. She then called the police and gave a description of the vehicle and the white male who banged on her door to Commonwealth witness Officer John S. Love of the Pine Township Police that at approximately noon on September 5, 1989.[1]

The second Commonwealth complaining witness testified that she discovered that her home had been burglarized when she returned home at approximately 12:50 p.m. on this same date. She found both her first floor window and side door to

1. Joan Prince, who did not testify at trial because she had relocated to South Carolina at the time of trial, had also filed a burglary report with Officer Love. Officer Love testified that nothing had been taken from her home but she reported the actors as four white males in their twenties. One male was approximately 5'6", with dark hair and glasses, and wore a hat. Another was approximately 5'9" and one wore a bandanna. Her former Pine Township address was approximately two blocks from the first complaining witness' residence.

her home open. Her house had been ransacked. A number of valuables were missing from her home, including: jewelry, a VCR, an Atari game machine, tapes, coins stored in cans, a sweeper, and a pillow case.

A third Commonwealth complaining witness testified that she returned home at approximately 2:30 p.m. on September 5, 1989, to find all the lights turned on in her house, all the doors open, the kitchen cabinets open with food strewn about, drawers in the house dumped out, and a broken chiming mantle clock, which had been in working order that morning, showing the time of 12:30. Her side porch door was also shattered and twisted off its hinges and the windows in a dining room glass door were punched out. The third witness' missing valuables included: a cassette recorder, a portable black and white television, a small camera, two stuffed birds, some collectable spoons and a high school ring. All three Commonwealth complaining witnesses lived within several blocks of each other.

Commonwealth witness Officer Kevin McCarthy of the Allegheny County Police testified that on September 5, 1989, he was on duty and that area police departments issued local broadcasts that they were searching for a black Monte Carlo connected to residential burglaries in the area.[2] At approximately 1:27 p.m., upon observing a speeding car matching the broadcast description, Officer McCarthy called for back-up and stopped the vehicle to investigate. Four white males, including appellant, occupied the vehicle. In plain view, Officer McCarthy observed jewelry, several sets of gloves and a large quantity of coins, which Officer McCarthy later learned were items reported as stolen from the second complainant's residence.

Responding to Officer McCarthy's back-up call, Officer Love arrived at the location of the black Monte Carlo, at which time

2. He also testified that on September 2, 1989, the State Police issued a "Be On the Lookout Bulletin" requesting information on a similar vehicle described as a black, later model Chevrolet Monte Carlo with a "V" type antenna mounted on the trunk, a loose muffler and an Ohio license plate, observed in the vicinity of several burglaries in neighboring counties.

he observed that the occupants of the vehicle and the vehicle matched the first complainant's and Prince's earlier descriptions. In plain view, Officer Love observed a white pillow case with floral design reportedly taken from the second complainant's home, as well as jewelry, coins, and several sets of brown gloves. Both the first complainant and Prince were brought to the scene of the vehicle stop where they positively identified the suspects and the vehicle. Officer Love also searched appellant and found two of the second complainant's earrings in his pants' pockets which had been reported taken from her residence. All four suspects were given their *Miranda*[3] rights and placed under arrest at the scene of the stop.

After the positive identifications by the first complainant and Prince, police secured the vehicle, towed it to the Pine Township Police Station, searched the vehicle and inventoried its contents. All the reported stolen items were discovered in the vehicle. The second complainant identified all her stolen property at the police station the next day while the third complainant identified her stolen property that same day at the police station. The suspects were given their *Miranda* rights a second time at the police station. Thereafter, appellant verbally and in writing waived his *Miranda* rights and admitted that he acted as the "lookout man" for the burglary conspiracy. N.T., 9/13/90, at pp. 119–20. He also gave the following written statement to police which Officer Love read into evidence:

Pete and I left our house around 10:30 a.m. We went to Troy's house at that time. We went to the North Park area. When we got there, Matt went up to some lady's door and knocked. She wasn't there. Troy and Matt both went into the house. Pete and I stayed out in the car waiting. I got out of the car to look down the road. We left that house and went to another house. The lady was sleeping. Matt went and knocked again, then went to the back of the house to see if there was a way in or not, I guess. A lady came to the window and said something to them. He has here in

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

parenthesis, Troy and Matt, because they came running back to the car. I'm not sure what the lady said when they left that place. Then we went to another [sic] where they again went and knocked, no one was home. So, from my understanding, Troy went and punched the window out, then went in. This is all I know. Then we got pulled over by the cops.

(N.T., 9/13/90, pp. 121–122).

Peter Lyle, one of appellant's co-conspirators (who pleaded guilty to the charges), testified that appellant was definitely part of the conspiracy to burglarize the victims. *Id.* at 160. Lyle testified that prior to the actual burglaries, the four conspirators met, discussed each other's role, and agreed that appellant would act as their "lookout man." They jointly selected the area of town where they wanted to commit the burglaries, and then agreed that they would divide whatever items they were able to steal amongst the four of them. N.T., 9/14/90, at pp. 147–49. Lyle further testified that appellant wanted to participate in the crimes because he needed to get money in order to get his car repaired. N.T., 9/14/90 at p. 166.

After hearing this overwhelming evidence, the jury convicted appellant of four counts of receiving stolen property,[4] two counts each of burglary[5] and theft by unlawful taking,[6] and one count of criminal conspiracy.[7] Post-verdict motions were denied and appellant was sentenced to an aggregate term of thirty-six (36) to seventy-two (72) months imprisonment, a consecutive term of two (2) years probation, and completion of a Drug and Alcohol Program. By order and Memorandum opinion, the Superior Court vacated the judgment of sentence and remanded the matter for a new trial holding that a mistrial was warranted because the co-conspirator's testimony regarding his and the other co-defendants' guilty pleas was so

4. 18 Pa.C.S. § 3925.
5. 18 Pa.C.S. § 3502.
6. 18 Pa.C.S. § 3921(a).
7. 18 Pa.C.S. § 903.

prejudicial as to deprive appellant of a fair trial. Upon the Commonwealth's Motion for Reconsideration, the Superior Court then by order and Memorandum opinion affirmed the original judgment of sentence by the trial court.

■  Appellant's first claim before this Court is whether the trial court committed reversible error because it failed to advise the jury that no inference may be drawn from an accused's silence after his arrest. Appellant claims that he was entitled to such an instruction after a Commonwealth police witness testified as follows regarding appellant's behavior preceding appellant's statement to police:

Q:  Officer, when the Defendant was placed under arrest, was he given his Miranda warnings?

A:  They were given their Miranda warnings both at the time of the arrest and when they were taken back to the station to be processed.

Q:  And do you have any documentation of that?

A:  Yes, we took all the individuals, all four actors, back to our police station for questioning in reference to the incident. And this particular case Mr. Robinson had been read his rights by myself and Sergeant Amann twice. And that was done basically because at 3:15 p.m., on 9/5/89 the day of the incident, we read him his rights. At that time he did not really give us much information in regards to that he appeared to be *somewhat hesitant as far as cooperating.*

Around 4:00, the Defendant stated that he wished to cooperate with us—

N.T., 9/13/90, pp. 111–113 (emphasis added). Following this testimony, defense counsel moved for a mistrial at sidebar. The trial court denied counsel's request for a mistrial and gave the following instruction to the jury at the conclusion of the sidebar conference:

Ladies and gentlemen, I would like to state, the testimony from the officer that came in about whether or not the Defendant was cooperative, I would like to state to you that clearly what he is testifying with regards to is his being

cooperative or uncooperative in giving a statement to the officers. That is all that it relates to. You may continue. N.T., 9/13/90, p. 113). Defense counsel did not object to this instruction after the trial court issued it.

At the outset, at no time during appellant's trial did defense counsel request further instruction on the matter or request a particular instruction regarding appellant's right to remain silent. Furthermore, per the record, appellant's claim that the instruction was not adequate was similarly not raised in post-verdict motions. Rather, the only challenge raised in appellant's post-verdict motions relating to this testimony was whether the trial court erred in not granting a mistrial. The essence of appellant's claim now before this Court is limited solely to whether the instruction by the trial court was adequate and not whether a mistrial should have been granted. Accordingly, defense counsel's failure to object to the trial court's instruction or challenge its adequacy results in a waiver of appellant's instant appellant claim. Pa.R.A.P. 302; Pa.R.Crim.P. 1119(b); *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992) (issues not considered in lower courts are waived and cannot be raised for the first time in the Supreme Court); *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973) (issues not raised at trial or in post-trial motions may not be raised for the first time on appeal); *Commonwealth v. Rounds*, 510 Pa. 524, 510 A.2d 348 (1986) (defendant who did not request cautionary instruction as to the limited purpose for which a witness' testimony could be used and did not make specific objection to the omission of the instruction, waived the issue); *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980) (where defense counsel failed to request a limiting instruction as to evidence that there was a bench warrant for appellant in an unrelated matter, the claim was waived and the trial court was not required to *sua sponte* instruct the jury). Appellant cannot sit silently at trial only to object on appeal once a guilty verdict has been entered. *Commonwealth v. Marlin*, 452 Pa. 380, 382, 305 A.2d 14, 16 (1973) ("A party may not remain silent and take chances on a verdict, and then if it is adverse complain afterwards of a

matter which, if an error, would have been immediately recti-fied and made harmless"), *quoting, Commonwealth v. Razmus,* 210 Pa. 609, 60 A. 264 (1905).

■ Notwithstanding appellant's waiver of this claim, a new trial is not warranted. During direct examination of Officer Love, the prosecutor pursued a line of questioning that attempted to recount the circumstances leading up to appellant's written statement and to demonstrate appellant's state of mind when he gave the statement in order to establish that appellant's statement was intentionally and deliberately given. In response, the officer stated that while appellant initially did not give police "much information" because he appeared to be "somewhat hesitant as far as cooperating," appellant nevertheless fully cooperated by giving a statement forty-five minutes later. The officer's comment that appellant gave only a limited amount of information before giving a full statement did not amount to an improper comment on appellant's right to remain silent since the appellant did not choose to remain silent. *See Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192 (1993) (on cross-examination prosecutor asked defendant "[p]rior to your testimony here in this courtroom today, however, you have not testified yourself, have you?" was not a comment on defendant's constitutional right to remain silent); *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716 (1992) (prosecutor's remarks, *inter alia,* that "... if this defendant was indeed the purported victim of this shooting incident, what does he have to hide ..." and "... all he has to do is say this gal was shooting at me, you know. He didn't have to run away from his home ..." were not improper comment on defendant's right to remain silent); *Commonwealth v. Beavers,* 492 Pa. 522, 424 A.2d 1313 (1981) (prosecutor's statement that if jurors were in defendant's place they would have told authorities that they didn't know their gun was loaded was not improper comment on defendants privilege against self-incrimination since defendant never attempted to exercise that privilege during post-arrest statement). Accordingly, in light of the fact that the appellant chose to give a statement to the police after waiving his right to remain silent, an instruction

regarding the right to remain silent was not warranted. The trial court's instruction explaining the limited purpose for the testimony—that is, to explain appellant's cooperativeness with police—was therefore adequate under these limited circumstances.

■ Appellant's second allegation of error is that the trial court erred by denying a mistrial after Peter Lyle, one of appellant's co-conspirators, testified during the prosecution's case-in-chief that he and the other two conspirators involved in the criminal acts pleaded guilty to the charges. The testimony specifically challenged is as follows:

BY THE PROSECUTOR

Q: I am going to ask you why you're here testifying today?

A: Well, I wasn't promised anything. As you know, I got fifteen years probation, which it could have been worse. Since I have never been in trouble before and I have a wife and two kids, that looked good on my part.

*What it is, the three of us pleaded guilty, me Matt and Troy, we all pleaded guilty. We know we made a mistake,* you know ...

N.T., 9/14/90, p. 156 (emphasis added). Upon the witness' spontaneous and unsolicited testimony regarding the other guilty pleas, defense counsel immediately moved for a mistrial; however, the trial court denied his motion.

■ Absent an abuse of discretion, the trial court's decision not to grant a motion for mistrial will not be disturbed. *Commonwealth v. Green,* 525 Pa. 424, 460, 581 A.2d 544, 561 (1990). A mistrial is warranted only when the incident upon which the motion is based is of such a nature as to deny the defendant a fair trial by preventing the jury from weighing and rendering a true verdict. *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630 (1991), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992).

■ The general rule of law is that where two or more persons are indicted for the same criminal offense but are tried separately, the fact that one defendant pleaded guilty or

was convicted is not admissible to establish the guilt of the other defendant on trial. *Commonwealth v. Thomas,* 443 Pa. 234, 245, 279 A.2d 20, 26 (1971).[8] However, not every passing reference to a co-conspirator's conviction necessitates a new trial; rather, such evidence must be prejudicial. *Id.*

Initially, we note that Lyle testified earlier during the trial and without objection that he himself had pleaded guilty to the charges, that he pleaded guilty without any promises or a sentencing agreement from the Commonwealth, that he had never been in trouble before, and that he had pleaded guilty simply because he knew he had made a mistake by committing the offenses charged. (N.T., 9/14/90 p. 145). Significantly, appellant failed to object to this testimony. Rather, appellant only objected when Lyle repeated later in his testimony that he *and* the two co-defendants pleaded guilty. Thus, appellant waived any challenge to Lyle's initial testimony that he pleaded guilty. *Commonwealth v. Kuterbach,* 458 Pa. 318, 326 A.2d 283 (1974) (defendant convicted of voluntary manslaughter waived errors in admission of evidence by failing to object to the admission of the evidence introduced by prosecution during trial); *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973) (issues not raised at trial may not be raised for the first time on appeal).

**8.** While, guilty pleas of a co-defendant cannot be used to establish the guilt of the defendant on trial, we are cognizant that the Commonwealth is permitted to bring out the circumstances surrounding a witness' agreement on direct examination in order to avoid any inference by the jury that the Commonwealth is attempting to keep a possible bias from them. *Commonwealth v. Hartey,* 424 Pa.Super. 29, 34, 621 A.2d 1023, 1026 (1993), *appeal denied,* 540 Pa. 611, 656 A.2d 117 (1994) (Commonwealth agreements should be fully, fairly and honestly disclosed at trial because they have a significant bearing on a witness' motive for testifying). *See Commonwealth v. Ross,* 434 Pa. 167, 170, 252 A.2d 661, 662 (1969) (where a witness is under indictment for the same crime for which the defendant is being tried, evidence of witness' indictment is relevant as bearing on the witness's interest in the immediate matter); *Commonwealth v. Coades,* 454 Pa. 448, 452 311 A.2d 896, 898 (1973) (a witness who is under indictment for the same crime involved in a case in which he is testifying may be cross-examined about that indictment in order to allow the jury to evaluate whether witness testified for prosecution to gain favorable treatment in his own case).

As to Lyle's unsolicited remark that the other two co-defendants also pleaded guilty, given Lyle's unobjected to testimony regarding his own plea and his testimony regarding appellant's complicity in the crimes, as well as appellant's own inculpatory verbal and written statements to police, plus the evidence that appellant was found in the car with stolen goods in his pants pocket at the time police pulled over the car, the extensive testimony from the victims, that the Commonwealth did not exploit the evidence of the other pleas, and we cannot say that the blurted testimony from Lyle had the effect of depriving appellant of a fair trial. Our review of the record reveals that the testimony was not prejudicial in light of the overwhelming evidence of appellant's guilt. We are convinced, therefore, that any possible error was harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 405, 383 A.2d 155, 162 (1978) (an error is harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless); *see also, Commonwealth v. Wharton,* 530 Pa. 127, 143, 607 A.2d 710, 718 (1992) (admission of codefendant's confession implicating defendant was harmless error given overwhelming evidence of defendant's guilt); *Commonwealth v. Thomas, supra,* 443 Pa. at 245, 279 A.2d at 26 (evidence of coconspirator's conviction at separate trial in murder prosecution, was not prejudicial in light of overwhelming evidence of petitioner's guilt). Hence, the trial court properly denied appellant's motion for a mistrial.[9] *Common-*

**9.** In connection with his claim that the trial court erred by not granting a mistrial, appellant also argues in his brief that the trial court erred by not providing a curative or limiting instruction after Lyle's testimony regarding the guilty pleas. However, a review of the record reveals that trial counsel specifically told the trial court that the alleged prejudice could not be cured by an instruction. N.T. 9/14/90 at p. 158. Appellant cannot now be heard to complain after a guilty verdict that the trial court erred in not given an instruction when the opportunity for such an instruction was declined at trial. *Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989) (trial counsel's failure to object when the trial court did not give a cautionary instruction following any evidence of defendant's prior incarceration resulted in waiver of any claim of error based upon the trial court's failure give a cautionary instruction); *Commonwealth v. Jones,* 501 Pa. 162, 460 A.2d 739 (1983) (issue was waived where defense counsel immediately objected to prosecutor's conduct but made no request for mistrial or curative

*wealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994) (prosecutor's cross-examination question whether victim was drunk on the night of the murder did not entitle defendant to mistrial even though point of question was to establish whether victim was drunk at time of alleged argument); *Commonwealth v. Nolen*, 535 Pa. 77, 634 A.2d 192 (1993) (trial court properly denied request for mistrial after prosecutor, on cross-examination of defendant, referred to defendant's silence at his preliminary hearing and first trial); *Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119 (1993) (mistrial in capital murder prosecution was not warranted by defendant's appearance in prison clothing and with bandaged head, swollen eyes, and sutured lip as result of a publicized prison riot); *Commonwealth v. Crispell*, 530 Pa. 234, 608 A.2d 18 (1992) (admission of defendant's cellmate's irrelevant statement that defendant stated that someone else was blaming him for "something" did not warrant a mistrial); *Commonwealth v. Savage*, 529 Pa. 108, 602 A.2d 309 (1992) (testimony by shooting victim's mother in murder trial indicating that victim was the "second kid" defendant had killed, made during emotional outburst and not in response to any question by prosecutor, did not entitle defendant to mistrial, in light of curative instruction that jury was to disregard unresponsive statements); *Commonwealth v. Styles*, 494 Pa. 524, 431 A.2d 978 (1981) (trial judge in prosecution of defendant for murder did not abuse her discretion in refusing to declare mistrial after occurrence of an outburst in that a courtroom spectator was heard crying).

Accordingly, the order of the Superior Court affirming appellant's judgment of sentence is affirmed.

NIX, C.J., and ZAPPALA and CAPPY, JJ., concur in the result.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

instructions); *Commonwealth v. Gonzales*, 463 Pa. 597, 603, 345 A.2d 691, 694 (1975) (objection that cautionary instructions should have been given was waived where "at no time during trial or the judge's charge did defendant request that cautionary instructions be given"). Hence, we reject this claim.