## Dragani v. Dragani

C.P. of Bucks County, no. A06-98-61559A-23.

*Itzchak E. Kornfeld,* for plaintiff.
*Emil Iannelli,* for defendant.

DEVLIN SCOTT, *J.,* June 22, 1999—Anthony Dragani, husband, has appealed our May 5, 1999 order granting the petition for protection from abuse filed by Carolyn Dragani, wife. We offer this opinion in support of our decision.

The parties were married in 1982 and divorced a few years later. They then remarried in 1986 after the birth of their first child. There were three children born of the marriage; Peter, 13 years old, Christopher, 11 years old, and Michael, 9 years old. Husband has been employed by the Conrail Police Department in Newark, New Jersey for 22 years. He currently holds the rank of lieutenant. Wife has worked outside the home for approximately two years, cleaning houses. At the time of the hearing, the parties had been informally separated for at least several weeks. Husband worked nights and Wife remained away from the parties' house during the day. She then came back to the home to stay with the children the nights when Husband went to work.

At the hearing on May 5, 1999, Wife testified to two recent incidents of abuse. The most recent incident occurred on April 18, 1999, when Wife came to the marital residence at approximately 4 p.m. Husband was scheduled to work that evening. She testified that Husband cornered her and said he was going to kill her. When she tried to get out the garage door, Husband slammed the door on her. She had bruises on her legs and upper right underarm as a result. Photographs were introduced which depicted the bruises. (Exhibits P-1 and P-2.) Wife continued to try to get away but Husband tackled her to the floor. The incident lasted approximately 15 minutes during which Wife tried to crawl across the den floor and get out a door but was blocked repeatedly by Husband. She went back and forth across the den floor. Husband had his hand over her mouth at some point and she could not breathe. She was finally able to get out through the garage door and get away in her car. During this incident, Husband had grabbed her by her blouse in the back and it ripped. The ripped blouse was produced as an exhibit at the hearing. (Exhibit P-3.) The parties' children witnessed at least part of this incident. Wife filed a report with the police later that day. On cross-examination, Wife denied that it was the children who had physically tried to prevent her from leaving. She indicated that she would not have been stopped by any of them, as the children did not weigh enough. Wife weighed approximately 115 pounds and Husband weighed approximately 215 pounds.

The other incident to which Wife testified in detail occurred on March 17, 1999. At that time when Wife came to the house in anticipation of Husband going to work there was another confrontation. Husband cornered Wife. When she tried to get away, he slammed the door

to the basement on her finger. He told her she was not going anywhere. On cross-examination, Wife testified that she had not consumed any alcohol on either occasion. Wife also testified that she feared Husband's possible use of his guns. (N.T., p. 12.)

Husband then testified as to his version of the events on both dates. He indicated that Wife has "an attitude." (N.T., p. 41.) He said that on April 18, 1999, Wife smelled like alcohol and that her eyes were funny. He acknowledged some physical interaction but claimed it was only to prevent Wife from leaving the house and driving drunk. He claimed that the children participated in trying to stop Wife from leaving. On cross-examination, Husband did acknowledge that the police report which Wife filed on April 18, 1999 indicated that Wife was at the police station at 6:30 p.m., but there is no mention of any alcohol in the police report.

Even though he had filed for divorce in 1998, Husband stated that he wanted to reconcile with his Wife and that he loved her very much. The parties had attempted a reconciliation for several months after the divorce was filed. However, this reconciliation was not permanent. A principal source of tension between the parties at the time of the hearing was Wife's absence from the home when Husband was there. He did not want her living away from the house at any time.

Both parties made reference to other prior violence but were not specific. (See N.T., p. 12, l. 4 and p. 34, l. 2.) Wife cried frequently throughout the hearing. During Wife's testimony, Husband was very agitated and appeared angry. He seemed barely in control. He glared at Wife frequently.

We found Wife's testimony credible. We did not find Husband's testimony credible. At the conclusion of the

hearing on May 5, 1999, we entered a one-year protection from abuse order which included the term that Husband was not to abuse, harass, stalk or threaten Wife. We also entered the Brady Indicator as part of this order. Husband then filed this timely appeal.

Husband has filed the following concise statement of matters complained of on appeal:

"(1) It was error for the court to admit photographs without proper authentication.

"(2) It was error for the court and an abuse of discretion to decide the matter before hearing all the evidence and to capriciously disbelieve competent evidence.

"(3) The order by its terms does not explicitly prohibit the use, attempted use, or threatened use of physical force against Wife that would reasonably be expected to cause bodily injury.

"(4) The evidence, taken as a whole, does not support the entry of a protection from abuse order.

"(5) The court erred in issuing a protection from abuse order in that the evidence does not establish that Wife suffered bodily injury.

"(6) The evidence is insufficient to support the entry of a Brady Indicator.

"(7) The form of the order is unconstitutionally overbroad in that as drawn, it requires a Brady Indicator in every case in which a protection from abuse order is entered."

The matters in this statement fall into two categories: (A) Issues involving the evidence at the hearing and whether a protection from abuse order should have been entered; and (B) Issues involving the Brady Indicator. We will discuss each of these issues below.

## ISSUES INVOLVING THE ADMISSIBILITY AND SUFFICIENCY OF THE EVIDENCE AT THE HEARING

### 1. *It Was Not Error for the Court To Admit Photographs Depicting the Abuse*

At the hearing, Husband objected to the admission of the two photographs, (P-1 and P-2), on the basis that the photographer was not there to authenticate the photographs. Wife testified that the pictures were taken on April 19, 1999 by Paula Narrone. Wife testified that the photographs accurately depicted the bruises she received from Husband on April 18, 1999. It was Husband's position throughout the hearing that Paula Narrone had a relationship with Wife. (See N.T., p. 53.)

Under the Pennsylvania Rules of Evidence, photographic evidence may be authenticated by a witness who has personal knowledge of what the picture depicts. Pa.R.E. 901(b)(1). Also see, *Commonwealth v. Rovinski*, 704 A.2d 1068 (Pa. Super. 1997). It is not required that the photographer be the one to testify as to the authenticity. *Aiello v. SEPTA*, 687 A.2d 399 (Pa. Commw 1996). Under the circumstances of this case, we found Wife's testimony sufficient to authenticate the photographs.

### 2. *The Court Did Not Decide the Matter Before Hearing All the Evidence*

Husband claims that this court decided the matter before hearing all the evidence. We disagree. After we received Husband's statement of matters complained of on appeal, we entered an order on June 4, 1999 directing

Husband to file a supplemental statement of matters, "stating the specific portion of the record to which appellant is referring in concise statement number 2." Husband's response was as follows:

"In concise statement number 2, appellant is referring to the notes of testimony of May 5, 1999 at pages 16 through 19 and 32 through 63."

Pages 16 through 19 deal with objections by Wife's counsel as to Husband's cross-examination of Wife on the issues of the reason for her absence from the home and her motivation in filing the petition. A review of this portion of the record reveals that we permitted Husband to ask any relevant questions on these issues.

Pages 32 through 63 deal with the direct examination of Husband. We find the supplemental statement is too general a response to ascertain what specific issue Husband is raising in connection with his direct testimony. In any event we did not reach a decision until after the conclusion of all the evidence. We listened to both parties before entering our order.

### 3. *The Evidence Established That Wife Sustained Bodily Injury and Warranted the Entry of a Protection From Abuse Order*[1]

We found Wife's testimony credible that Husband had inflicted the bruises on her. Wife sustained bodily injury. We also found that this was not an isolated incident. Even at the time of the hearing, Husband continued to be very upset with Wife. In addition, his desire for reconciliation did not appear to be reciprocated. We considered this a volatile situation that could easily re-

---

1. Matters complained of on appeal 4 and 5.

sult in further abuse if no order were entered. A protection from abuse order was warranted.

## ISSUES INVOLVING THE BRADY INDICATOR

The issues that Husband raises in his concise statement that relate to the Brady Indicator are as follows:

"(1) The order by its terms does not explicitly prohibit the use, attempted use, or threatened use of physical force against Wife that would reasonably be expected to cause bodily injury.

"(2) The evidence is insufficient to support the entry of a Brady Indicator.

"(3) The form of the order is unconstitutionally overbroad in that as drawn, it requires a Brady Indicator in every case in which a protection from abuse order is entered."

Before discussing these issues, we note that the Brady Indicator has recently been added to the standard protection from abuse form. It is called the Brady Indicator because it tracks relevant provisions of the federal Brady Law[2] relating to the transportation, ownership or possession of firearms. The Brady Indicator is paragraph 12 on the standard protection from abuse form mandated by Pa.R.C.P. 1905. It states as follows:

"(A) 12. Brady Indicator.

"(1) (A) The plaintiff or protected person(s) is a spouse, former spouse, a person who cohabitates or has cohabited with defendant, a parent of a common child, a child of that person or a child of the defendant.

"(2) (A) This order is being entered after a hearing of which the defendant received actual notice and had an opportunity to be heard.

---

2. 18 U.S.C. §922(g).

"(3) (A) Paragraph 1 of this order has been checked to restrain the defendant from harassing, stalking or threatening plaintiff or protected person(s).

"(4) (A) Defendant represents a credible threat to the physical safety of plaintiff or other protected person(s).

"Or

"(A) The terms of this order prohibit defendant from using, attempting to use or threatening to use physical force against plaintiff or protected person that would reasonably be expected to cause bodily injury." This provision was adopted March 9, 1998 and became effective July 1, 1998.

The explanatory comment to Pa.R.C.P. 1905 states in relevant part:

"I. General use of forms

"The provisions in the form petition and orders reflect the most common forms of relief available under the Protection from Abuse Act. . . . Since all of the provisions will not necessarily apply in every case, the forms adopt a checkbox method that requires the user to affirmatively check only those provisions which are applicable to his or her situation. . . .

"II. The Brady Law

"Paragraph 12 of the final protection order reflects what are known as the 'Brady' provisions of the federal Violent Crime Control and Law Enforcement Act of 1994 (P.L. 103-322), codified at 18 U.S.C. §922(g). These provisions amend the Gun Control Act of 1968 to extend the prohibitions relating to the possession, receipt and purchase of firearms and ammunition to persons who are subject to a final protection order, if the order meets the following four criteria: (1) the order must have been entered after a hearing of which the defendant received

actual notice and had the opportunity to participate; (2) the plaintiff or protected person is an 'intimate partner' within the meaning of 18 U.S.C. §921(a)(32), or a child of an intimate partner, or a child of the defendant; (3) the terms of the order restrain defendant from harassing, stalking, or threatening the plaintiff or protected person; and (4) the order includes a finding that the defendant represents a credible threat to the physical safety of the intimate partner or child or by its terms explicitly prohibits the use, attempted use or threatened use of physical force against the intimate partner or child that would reasonably be expected to cause bodily injury. . . .

"The Brady Indicator is a mandatory field for entry of a protection order into the national NCIC file, *i.e.,* federal data entry agencies are required to indicate by a 'yes' or 'no' response whether a final protection order meets these criteria for disqualifying a defendant from possessing or purchasing firearms or ammunition. Thus, if all four provisions of paragraph 12 are affirmatively checked, the order will be entered into the statewide registry and the NCIC file as a 'yes' response indicating that the defendant may be subject to prosecution by the appropriate authorities under federal law if he or she possesses, receives or purchases firearms at any time while the order is in effect. If all four provisions have not been checked, then the order is entered as a 'no' response indicating that the order is not Brady-eligible."

We now turn to the specific issues that Husband raises on appeal with respect to the Brady Indicator.

### 1. *Order by Its Terms Does Explicitly Prohibit the Use, Attempted Use, or Threatened Use of Physical Force Against Wife That Would Reasonably Be Expected To Cause Bodily Injury*

The order we entered on May 5, 1999 prohibits Husband from abusing, harassing, stalking or threatening Wife. Abuse is defined under the Protection from Abuse Act in relevant part[3] as follows:

" 'Abuse.' The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

"Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury . . .

"Placing another in reasonable fear of imminent serious bodily injury . . .

"Knowingly engaging in a course of conduct or repeatedly committing acts towards another person, including following the person, without proper authority under circumstances which place the person in reasonable fear of bodily injury . . . ."

It is clear that, in light of the definition of abuse, that paragraph 1 of order which prohibits Husband from abusing Wife, meets the criteria that the order explicitly prohibit the use, attempted use, or threatened use of physical force that would be expected to cause bodily injury.

### 2. *The Evidence Is Sufficient To Support the Entry of a Brady Indicator*

As discussed above, the evidence in this case clearly showed that Husband had abused Wife and that a pro-

---

3. 23 Pa.C.S. §6102.

tection from abuse order was warranted. All four criteria of the Brady Indicator form were met in this case:

(1) Wife was a spouse.

(2) There was a hearing.

Paragraph 1 of the order, prohibiting defendant from harassing, stalking or threatening Wife was entered.

The terms of the order prohibit defendant from using, attempting to use or threatening to use physical force against Wife that would reasonably be expected to cause bodily injury (this provision is discussed in the concise statement above).

As discussed below, in this case, we entered the Brady Indicator because Husband had owned or possessed firearms.

### 3. *The Form of the Order Is Not Unconstitutionally Overbroad*

We initially note that Husband failed to raise this issue with this trial court. Husband did not file a motion in limine challenging the standard form of the order which was part of the petition served on him. He did not file a petition for reconsideration on the issue of the Brady Indicator after hearing. Husband did file a petition for a supersedeas on May 13, 1999, but did not raise the issue of the constitutionality of this form in his supersedeas petition.[4] Under the rules of appellate procedure, Husband is required to raise such issue with the trial court. Pa.R.A.P. 302(a) states as follows:

"General rule. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."

Even an issue such as the constitutionality of the standard form is waived unless raised before the trial court.

---

4. On June 18, 1999, the Superior Court granted a supersedeas as to the Brady Indicator for a firearm that Husband carries at work.

See *Commonwealth v. Robinson,* 543 Pa. 190, 670 A.2d 616 (1995). Therefore, we believe that Husband has failed to preserve this issue for appellate review.

Defendant does not state exactly what constitutionally protected right is violated by the use of this form. However, since he objects to the entry of the Brady Indicator, we presume he is referring to the prohibition from owning or possessing firearms. The federal courts have concluded that the right to bear arms guaranteed by the Second Amendment to the Federal Constitution is a collective rather than an individual right and applies only to the right of the state to maintain a militia, not to any individual right to bear arms. *United States v. Warin,* 530 F.2d 103 (1976); *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816 (1939). The Pennsylvania Constitution, Article I, Section 21 also considers the issue of firearms. It states as follows:

"The right of the citizens to bear arms in defense of themselves and the state shall not be questioned."

However, the Pennsylvania Supreme Court has ruled that the state may regulate the possession of such firearms. See *Ortiz v. Commonwealth,* 545 Pa. 279, 681 A.2d 152 (1996). Reasonable regulation in gun control law is a valid exercise of the police power of the Commonwealth. *Commonwealth v. Ray,* 218 Pa. Super. 72, 272 A.2d 275 (1970), *vacated on other grounds,* 448 Pa. 307, 292 A.2d 410 (1972). It is clear that it is a reasonable regulation of the police powers of the Commonwealth to prohibit someone who has been found to have engaged in domestic violence from owning or possessing firearms.

In any event, this form of order is not unconstitutionally overbroad. Defendant argues that the Brady Indicator is mandated every time a protection from abuse order is entered. Even if that were true, we do not believe that

this would make the standard form unconstitutionally overbroad. It would simply prohibit anyone who has been found after a hearing to have engaged in domestic violence from owning or possessing a firearm for the duration of the order. However, as part I, the general comments to Pa.R.C.P. 1905 which is cited above indicate, every provision of the form is not applicable to every case. As part II of the comments to Pa.R.C.P. 1905 also cited above states, all four subparts of paragraph 12 must be checked off for the Brady Indicator to apply. There is nothing in the form which mandates that the Brady Indicator be checked off in every case as Husband contends.

In this particular case, we checked off the Brady Indicator because there had been domestic abuse and Husband had a history of owning or possessing firearms. We found the Brady Indicator applicable to such a situation.

For the above reasons we entered our order of May 5, 1999.