J-A12043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON WEBB | : | |
| | : | |
| Appellant | : | No. 2413 EDA 2022 |

Appeal from the PCRA Order Entered August 15, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001148-2016

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 15, 2023**

Jason Webb appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. He argues the PCRA court erred in concluding his trial counsel was not ineffective. We affirm.

We previously summarized the facts underlying Webb's conviction as follows:

> [O]n October 7, 2015, [Webb] used a BB gun to rob Star Mini Market in Philadelphia with three accomplices, including Kareem Hampton. During the robbery, [Webb] threatened the employee at the cash register with the BB gun. After Hampton took cigarettes and approximately $700 from the register, [Webb] and his accomplices fled on foot. Surveillance cameras inside the store captured the entire robbery.
>
> After the Philadelphia Police Department posted video of the robbery and sought help from the public, a Philadelphia police officer recognized Hampton. [Samantha Hutchinson] also viewed the video and recognized both [Webb] and Hampton. Police recovered a pair of pants matching the pants [Webb] was wearing during the robbery. After police arrested Hampton, Hampton

confessed to his part in the robbery and identified [Webb] as an accomplice.

***Commonwealth v. Webb***, No. 250 EDA 2017, 2018 WL 3582550, at *1 (Pa.Super. filed July 26, 2018) (unpublished mem.).

Relevant to this appeal, before she identified Webb, Hutchinson testified that she was in a romantic relationship with Webb from 2008 through 2014. She stated that she and Webb lived together for approximately seven years, except during a period when Webb was incarcerated. Counsel objected. Hutchinson's relevant testimony, and counsel's objection, were as follows.

Q. Good afternoon, Ms. Hutchison.

A. Good afternoon.

Q. Ms. Hutchison, do you know the defendant seated next to counsel, Jason Webb?

A. Yes, I do.

Q. And how do you know him?

A. We were in a relationship for seven years, and he was the father of my six-year-old daughter.

Q. You said that you were in a relationship for seven years. When was this?

A. From May of 2008 until December of 2014.

Q. And during those seven years, did the two of you live together?

A. Yes.

Q. For how many of those years?

A. Seven.

Q. Seven of the years.

A. Yeah.

Q. All of the years.

A. Well, **he was incarcerated for part of the time**; but for the other time, yes.

Q. And when you were living with him during those years -- or scratch that -- you had a child, you said.

A. Yes.

Q. You have a six-year-old together.

A. Yes.

MR. CAMERON: Your Honor, objection to the --

THE COURT: Okay. Okay. Just let me see you at sidebar for a second.

(Whereupon, a discussion was held off the record at sidebar with the Court and counsel.)

N.T., 9/13/16, at 88-89 (emphasis added). Hutchinson's testimony resumed after the sidebar.

After the conclusion of testimony that day, counsel addressed the court. He said he would wait until the close of evidence to determine whether to request a cautionary instruction regarding Hutchinson's testimony about Webb's incarceration. Counsel expressed his belief that an instruction might be moot once the jury heard the admissible recordings of Webb's prison phone calls. He also considered that an instruction might further draw the jury's attention to the fact that Webb had previously been incarcerated. The exchange was as follows:

MR. CAMERON . . . Your Honor, on behalf of Mr. Jason Webb, there was an inadvertent, I believe an utterance regarding incarceration --

THE COURT: Right.

- 3 -

MR. CAMERON: -- prior incarceration as testified to by his ex.

THE COURT: Samantha Hutchinson; right?

MR. CAMERON: By Ms. Hutchinson, his ex-girlfriend.

THE COURT: Right.

MR. CAMERON: So I'm making this record so that we do not forget about this issue as we proceed through the trial tomorrow and maybe on Thursday. As well as that to determine whether or not at the very end of the case whether they should be given -- yes or no, we'll make that determination -- whether there should be a curative instruction --

THE COURT: Right.

MR. CAMERON: -- along with the other jury instructions that will be given to the -- to the jury.

THE COURT: Right.

MR. CAMERON: However, and as we know, there is some documentation by way of audio -- audio tapes that will be played from the prison involving my client.[1] So that may become moot.

THE COURT: Um-hmm.

MR. CAMERON: So they will know that there were going to be prison tapes. So that issue of the utterance of the incarceration may become moot.

THE COURT: Or --

MR. CAMERON: So also, lastly, to protect the record, I, as his attorney, do not want to emphasize --

THE COURT: Right.

MR. CAMERON: -- any more what has been said about my client being incarcerated. So I say – it's an old saying, no news or less news is better than news. So no news is good news.

THE COURT: What I was about to say is it may become moot, but it may also become strategically to your advantage and your

---

[1] The Commonwealth introduced three phone calls that Webb made from prison. **See** N.T., 9/14/16, at 193-94; Exh. C-27.

client's advantage not to highlight it. Because when Samantha testified, she didn't say at what period of time he was incarcerated.

MR. CAMERON: That's correct.

THE COURT: And obviously, when the jury hears the prison tapes, they're going to know that he was in prison at that point.

MR. CAMERON: Right.

THE COURT: But there's not – there's a disconnect between, you know, the commentaries that he made while he's in prison and -- and any commentary that -- any reference that Samantha made about his being incarcerated.

MR. CAMERON: Thank you, Your Honor.

THE COURT: So that's -- when we had a sidebar, obviously, you did raise, you know, this objection. I agreed with you. I asked you, just so we're clear on the record, whether you wanted me to give a cautionary instruction right then and there. And I also asked the Commonwealth. And it was your preference at that point that I not give an immediate cautionary instruction, that we would sort of think about how the evidence would unfold and make a decision later on as to whether it would be appropriate to give one.

MR. CAMERON: Because we did not want to highlight --

THE COURT: Right.

MR. CAMERON: -- and emphasize that issue.

THE COURT: Right. Exactly.

MR. CAMERON: We don't want that.

THE COURT: Right.

MR. CAMERON: That's strategic.

THE COURT: And I'm going to assume that you won't want one given unless, like I said, the evidence dictates otherwise.

MR. CAMERON: Correct.

THE COURT: If you would like one given, we're going to have a charging conference, you can re[-]raise your request at that point. Okay?

MR. CAMERON: Thank you. That's right.

THE COURT: All right.

*Id.* at 145-49.[2] Counsel never requested a jury instruction regarding Hutchinson's testimony as to Webb's prior incarceration. **See** N.T., 9/15/16, at 9-29. Nor did he move for a mistrial.

_____

[2] The court also addressed Webb:

> THE COURT: All right. And just so you'll know, sir, your attorney did raise the issue, because, normally, when someone is on the stand, they shouldn't say anything about a defendant being incarcerated. However, it's going to be brought out later on when they play the prison tapes, which the Commonwealth has a right to do.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Because they're statements that you made. It's known as statements of a party opponent.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Your statements can come in. And so I would not prevent that evidence from coming in.
>
> THE DEFENDANT: Okay.
>
> THE COURT: But the point is the jury -- you might be more prejudiced if I give the cautionary instruction, because then, you know, I have to go into detail about your previous imprisonment in which you were incarcerated for what, seven years? How long were you incarcerated?
>
> THE DEFENDANT: Six.
>
> THE COURT: Six years. So we don't want the jury to know that. You understand what I'm saying?
>
> THE DEFENDANT: Yes, sir.

*(Footnote Continued Next Page)*

- 6 -

THE COURT: Have I made myself clear?

THE DEFENDANT: Yes.

THE COURT: So I think, strategically, for what it's worth, I would agree with your attorney. But if there's a need to give a cautionary instruction, we can make that decision later, and I'll give it if your attorney would like me to give it on your behalf. Okay?

THE DEFENDANT: Okay.

THE COURT: Do you understand what I'm saying?

THE DEFENDANT: Yes.

THE COURT: Am I clear?

THE DEFENDANT: Yes.

THE COURT: Because I don't want you thinking that we're treating you unfairly.

THE DEFENDANT: All right.

THE COURT: It's really for your advantage.

THE DEFENDANT: Yes.

MR. CAMERON: I agree.

THE COURT: I don't think the jury, in other words, is going to be able to make a distinction between when you were in prison at the time you gave the, you know, made the tapes --

THE DEFENDANT: Right.

THE COURT: -- or made the statements on the tape versus when you were in jail previously for six years. You follow me?

THE DEFENDANT: Yes.

THE COURT: They're not going to know the difference unless we highlight it. So it doesn't make a lot of sense to dwell on it. All right?

THE DEFENDANT: Um-hmm.

*(Footnote Continued Next Page)*

The jury convicted Webb of robbery, conspiracy to commit robbery, and possession of an instrument of crime.[3] The court sentenced Webb to serve eight and one-half to 17 years' incarceration and a consecutive five years of probation. We affirmed Webb's judgment of sentence, and the Supreme Court denied his petition for allowance of appeal in January 2019. **See Commonwealth v. Webb**, 200 A.3d 940 (Table) (Pa. 2019).

Webb timely filed a PCRA petition, *pro se*, in November 2019. The sole issue Webb raised was ineffective assistance of his trial counsel relating to Hutchinson's testimony regarding Webb's prior incarceration. The court appointed counsel, who filed a no-merit letter and moved to withdraw.[4] The court issued a Rule 907 notice of its intent to dismiss the petition without a hearing. **See** Pa.R.Crim.P. 907(1). The docket thereafter contains an entry stating that the court denied the petition and permitted counsel to withdraw. **See** Trial Court Docket Entry #214, 3/24/21 ("Defendant in custody at SCI Forest[;] Courthouse closed due to Covid-19[;] Notice previously sent[;] PCRA Petition denied and dismissed[;] Attorney withdrawn as counsel by request"). However, the court did not issue a written order dismissing the petition, and

THE COURT: All right.

*Id.* at 149-51.

[3] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, and 907(a), respectively.

[4] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) (explaining procedure for withdraw of PCRA counsel).

- 8 -

it is unclear what notice, if any, was provided to Webb. **See** Pa.R.Crim.P. 907(4).

A week later, Webb, *pro se*, filed a copy of his PCRA petition with an attachment stating, "I am filing my 2nd level P.C.R.A. appeal." PCRA Pet., 3/31/21, at 15 (unpaginated). The Commonwealth filed a letter advising the court to treat Webb's filing as a supplement to his earlier petition, which the court had never properly dismissed. According to the docket, the court then vacated its previous Rule 907 notice and appointed new counsel. **See** Trial Court Docket Entry #251, 9/1/21.

Counsel filed an amended petition in May 2022. The court again issued a Rule 907 notice of its intent to dismiss the petition without a hearing. The court found that counsel's delayed objection "reflected a calculated effort to draw the jury's attention away from [Webb's] previous incarceration." **See** Rule 907 Notice, 7/19/22, at 2 (unpaginated). The court similarly found that counsel had had a reasonable basis for failing to request a cautionary instruction, which was to prevent the jury from further considering Webb's prior incarceration. **See id.** It also found Webb could not have suffered prejudice from counsel's decision not to request a cautionary instruction, because the jury had been presented with overwhelming evidence of Webb's guilt:

> For example, after viewing the robbery footage, Ms. Hutchinson testified that she recognized [Webb] by his clothing, including pants that she purchased for him, and his gait. She also identified [Webb]'s co-defendant who, in turn, testified about [Webb's] role in the robbery. By way of further illustration, the jury later heard

evidence presented via audio tapes implicating [Webb] while he was in prison.

*Id.* at 3 (emphasis omitted) (citations to notes of trial transcript omitted).

The court similarly found that a motion for a mistrial, based on Hutchinson's single statement, would have failed because of "the wealth of evidence against him." *See* PCRA Court Opinion, filed 10/12/22, at 8. The court thereafter dismissed the petition, this time via a written order.

Webb appealed, and raises the following issue:

Whether the [PCRA] court erred, when it dismissed [Webb]'s amended PCRA petition as being without merit, as this claim has merit, as trial counsel was ineffective for failing to object in a timely manner and move for a mistrial, when Commonwealth witness Samantha Hutchinson testified that [Webb] had been incarcerated during some of the period of time that they were in a relationship, as this was prejudicial, due to the fact that as a result of this testimony, the jury knew that [Webb] had spent time in prison, which tainted his presumption of innocence, and that he therefore did not get a fair trial as guaranteed by the Sixth and Fourteenth Amendments of the united States Constitution and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania?

Webb's Br. at 4.

Webb concedes that trial counsel objected to Hutchinson's testimony about his being in prison. *See id.* at 27. He maintains, however, that his trial counsel's objection was not timely, as counsel allowed the prosecutor to ask two additional questions before objecting. *See id.* Webb also contends that counsel was ineffective for failing to move for a mistrial.[5] Webb argues that

---

[5] Webb has abandoned his claim that counsel was ineffective for failing to request a curative jury instruction.

- 10 -

Hutchinson's testimony that he had previously been incarcerated tainted his presumption of innocence and denied him a fair trial. He posits that counsel's failure to object sooner or move for a mistrial could not have been the result of a strategic or tactical decision.

He also argues that there is a reasonable probability that without this testimony, the jury would have found him not guilty. Webb argues that the evidence against him was not overwhelming, as the victim did not identify him; Hampton's testimony as a cooperating witness was self-serving; and Hutchinson, his former paramour, was biased against him. He also points out that the detective who searched his home did not find the handgun that was allegedly used in the robbery.

We review the denial of PCRA relief to determine whether the PCRA court's order "is supported by the evidence of record and is free of legal error." *Commonwealth v. Midgley*, 289 A.3d 1111, 1118 (Pa.Super. 2023) (citation omitted). We will only disturb the PCRA court's findings if the certified record does not support them. *Id.*

> The standard for a claim of ineffective assistance of counsel is as follows.
>
> Counsel is presumed to be effective. To overcome this presumption, the petitioner must plead and prove: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. A failure to satisfy any of the three prongs is fatal to the claim.

*Id.* at 1119 (internal quotation marks and citations omitted).

- 11 -

Due to its inherently prejudicial nature, evidence of criminal conduct other than that charged is generally inadmissible. **See** Pa.R.E. 404(b)(1); **Commonwealth v. Padilla**, 923 A.2d 1189, 1194, 1196 (Pa.Super. 2007) (finding trial court erred in denying mistrial after officer testified that at the time of the crime, defendant had "just got[ten] out of jail"). However, a mistrial is warranted only if improper testimony "is of such a nature as to deny the defendant a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Robinson**, 670 A.2d 616, 621 (Pa. 1995). The admission of prejudicial testimony may be rendered harmless by the overwhelming evidence of a defendant's guilt. **Id.** at 622. It is a trial court's discretion to determine whether a defendant has been prejudiced by inadmissible evidence such that a new trial is warranted. **Id.** at 621.

Webb's ineffectiveness claims fail. He has not demonstrated that counsel should have objected earlier to Hutchinson's testimony. The intervening questions between Hutchinson's mention of incarceration and counsel's objection were about Hutchinson's child. The failure to object sooner therefore caused no harm to Webb, and he has not shown any other reason counsel ought to have objected sooner. Furthermore, the court's conclusion that counsel had a reasonable basis for pausing before lodging an objection is supported by the record. The court stated on the record that after objecting, counsel had expressed concerns that adding a cautionary instruction would highlight the improper testimony. This supports the court's conclusion that

counsel strategically waited until a more neutral point in the testimony to object.

Nor was counsel ineffective for failing to move for a mistrial. Webb has not shown that the claim that Hutchinson's remark prevented the jury from weighing and rendering a true verdict has arguable merit. Not only did Hutchinson identify Webb on the surveillance video based on his demeanor and his clothes, a search of Webb's home uncovered pants matching those worn during the robbery. Webb's co-conspirator, Hampton—whom an officer recognized when watching the video—testified against him. Finally, the Commonwealth introduced phone calls Webb made while in prison in which he requested the caller write to Hampton and tell him to "zip up," and emphasized that his cellmate can inform him of "whoever's snitching." *See* Exh. C-27 at 2.

Moreover, as the PCRA court stated, even if Webb had satisfied the other ineffectiveness prongs, his ineffectiveness claims cannot succeed because he has not shown prejudice. *See* PCRA Ct. Op. at 6. In view of the significant evidence against Webb, we cannot say that either of the errors Webb asserts, assuming for the sake of argument that they were errors, undermines confidence in the verdict.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023