J-S13035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM F. HARTMAN | |
| Appellant | No. 156 EDA 2016 |

Appeal from the Judgment of Sentence December 7, 2015
in the Court of Common Pleas of Delaware County Criminal Division
at No(s): CP-23-CR-0004506-2014

BEFORE: BENDER, P.J.E., LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 17, 2017**

Appellant, William F. Hartman, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas following a jury trial and his convictions for possession of child pornography[1] (four counts) and criminal use of communication facility[2] (one count). Appellant asserts that his convictions were against the weight of the evidence, and that the trial court erred by permitting the admission of certain evidence and by imposing an illegal sentence. We affirm.

We adopt the facts and procedural history as set forth in the trial court's opinion. *See* Trial Ct. Op., 5/16/16, at 1-7. On December 7, 2015,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6312(d).

[2] 18 Pa.C.S. § 7512(a).

Appellant was sentenced to a mandatory twenty-five to fifty years' imprisonment on each of the four counts of child pornography,[3] with each sentence to be served concurrently. In addition, the trial court sentenced Appellant to an additional twelve to eighteen months' imprisonment and five years' probation on the criminal use of communication facility conviction, to be served consecutively to the sentence imposed for his child pornography convictions. On January 6, 2016, Appellant filed the instant timely appeal and subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> I. Whether the trial court erred in not finding [Appellant's] verdict was against the weight of the evidence.
>
> II. Whether the trial court committed errors during the trial which prejudiced [Appellant] and contributed to his guilty verdict which requires reversal for new trial.
>
> III. Whether the trial court entered an illegal sentence as to the minimum mandatory sentence for subsequent conviction for possession of child pornography in violation of *Alleyne* and related cases and further abused its discretion in sentencing [Appellant] to consecutive time and probation on an already lengthy sentence.

Appellant's Brief at 4.[4]

---

[3] The trial court sentenced Appellant pursuant to 42 Pa.C.S. § 9718.2, which sets forth a mandatory minimum sentence for any person with a prior conviction for certain sexual offenses, including child pornography.

[4] Appellant's issues have been reordered for ease of disposition.

In his first issue, Appellant claims the verdicts were against the weight of the evidence. He argues that only four photos, out of thousands of images retrieved from his computer, were indicated to possibly constitute child pornography and were considered the "lowest category of questionable or of concern." Appellant's Brief at 12. Further, he asserts that others could easily have accessed his computer, even after the Commonwealth seized it, and therefore he was not the only person who could have been responsible for the photos.

In his second issue, Appellant challenges several evidentiary rulings by the trial court. He avers that the trial court erred by admitting into evidence a fifth photo, depicting purported child pornography, for which he was not charged. He contends that the trial court's decision to allow the jury to learn about his prior conviction for child pornography constituted error, which caused him substantial prejudice. Appellant also argues that the trial court erred by allowing evidence of "unsavory sites" he purportedly accessed via his computer when the Commonwealth was unable to present any evidence that the photos at issue were linked to those websites. Lastly, he asserts that the Commonwealth's closing argument contained prejudicial and impermissible comments regarding the prosecutor's personal belief that Appellant did not find the photos at issue to be "distasteful."

Appellant's third issue concerns challenges to his sentence. He specifically argues that his sentence was illegal, pursuant to *Alleyne v.*

*United States*, 133 S. Ct. 2151 (2013), due to the mandatory minimum sentence applied. Further, he argues that he did not receive proper notice of the Commonwealth's intention to seek a mandatory minimum sentence. Moreover, he also argues the sentence reflected a "gross disproportionality" between his crime, which involved a "mere" four photographs, and his "extremely lengthy sentence."

We begin by noting that the weight of the evidence is exclusively for the finder of fact, who "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). The trial judge may award a new trial only if the fact finder's "verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009) (citations omitted). "[A]ppellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011) (citation omitted).

The instantly relevant statutory provisions include:

> **(d) Child pornography.-**Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S.A. § 6312(d).

Further, it is axiomatic that:

> [q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record."

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1036 (Pa. Super. 2014) (quotations and citations omitted).

Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible "when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Commonwealth v. Ross*, 57 A.3d 85, 98 (Pa. Super. 2012) (*en banc*). Moreover, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011) (citations omitted).

Regarding Appellant's sentencing claims, *Alleyne* does not require that the fact of a prior conviction be presented at trial and found beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2160 n.1 (noting, "In *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140

- 5 -

L. Ed. 2d 350 (1998), we recognized a narrow exception . . . for the fact of a prior conviction.")

In addition, this Court has stated that

> discretionary aspects of [an appellant's] sentence [ ] are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test.
>
> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015) (some citations omitted).

After careful consideration of the record, the parties' briefs, and the thorough and well-reasoned decision of the Honorable James F. Nilon, Jr., we affirm on the basis of the trial court's decision. *See* Trial Ct. Op. at 8-35 (holding (1) Appellant's conviction was not against the weight of the evidence where trial testimony established that the photos at issue constituted child pornography under Pennsylvania law, it is unlikely any other persons had access to Appellant's computer, and a search of Appellant's computer revealed 400 "hits" for the words "preteen and "pre teen" (2) the trial court properly admitted a) a fifth photo in order to

demonstrate the lewd character of the nudity depicted in the other photographs as well as Appellant's intent, b) evidence of Appellant's prior conviction for child pornography to impeach Appellant, c) Appellant's relevant search history on his computer, and d) the district attorney's "fair comment" regarding Appellant's preferences during closing argument (3) Appellant's minimum mandatory sentence, imposed based on a prior conviction, is not illegal pursuant to **Alleyne**).[5]  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

P.J.E. Bender and Judge Lazarus join the memorandum.

Justice Fitzgerald files a concurring statement, which P.J.E. Bender joins.

---

[5] We note that Appellant failed to properly preserve his excessive sentence claim either during sentencing or by post-trial motion.  **See Leatherby**, 116 A.3d at 83.  Nevertheless, we agree with the trial court that Appellant's claim regarding the court's imposition of a consecutive sentence does not raise a substantial question in this case.  Trial Ct. Op., at 23; **See Commonwealth v. Pass**, 914 A.2d 442, 446-47 (Pa. Super. 2006) (holding Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.  Any challenges to the exercise of this discretion ordinarily does not raise a substantial question.")

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | No. 156 EDA 2016 |
| v. | |
| WILLIAM HARTMAN | CP-23-CR-0004506-2014 |

Michael Galantino, Esquire, Deputy District Attorney for the Commonwealth of Pennsylvania
Karen E. Friel, Esquire, Attorney for the Appellant

## OPINION

NILON, J.

FILED: 5/16/16

William Hartman, hereinafter "Appellant," has filed an appeal from his conviction for the charges of Possession of Child Pornography (4 counts) and Criminal Use of Communication Facility (1 count). The Appellant's arguments are meritless.

**Factual History:**

The Appellant was charged and convicted of four counts of Possession of Child Pornography and Criminal Use of Communication Facility stemming from his intentional possession and/or control of five images on his computer that depicted children engaged in prohibited sexual acts and/or sexually explicit poses. At the time of the discovery of these images, the Appellant had previously entered a guilty plea to nearly identical conduct.

**Prior Case: (CP-23-CR-2604-2013):**

The Appellant had a prior conviction for the same charges and conduct that he was convicted of in the case *sub judice*. In August of 2012, a detective from the Virginia Internet Crimes Against Children (ICAC) Task Force obtained a computer hard drive from the Appellant's estranged wife.

1



This computer hard drive had been used in a shared computer by both the defendant and his wife. The Virginia ICAC Task Force submitted the hard drive to the Delaware County Criminal Investigation Division (CID). A forensic examination led to the discovery of more than fifty (50) images of children under the age of 18 engaged in prohibited sexual acts. On November 12, 2013, the Appellant entered a negotiated guilty plea to one count of Sexual Abuse of Children- Possession of Child Pornography and one count of Criminal Use of Communication Facility. He was sentenced to a minimum of six months to 23 months on electronic home monitoring and a consecutive term of probation of five years.

**Current case:**

On December 4, 2013, shortly after the Appellant was sentenced, the parole agent, Carissa Tillotson, conducted an unannounced check on the Appellant's house to ensure that the Appellant was in compliance with the terms of the sentence. The Appellant resided at 29 Delaware Avenue, Ridley Park Borough, Delaware County, Pennsylvania. Upon examining the Appellant's computer and employing scanning software, the parole agent observed websites and images that she believed may pertain to and depict minors involved in sexually explicit conduct. She seized the computer and turned it over to CID detectives. Parole officer Tillotson notified Sgt. Jack Kelly of CID. Sgt. Kelly obtained a search warrant for the Appellant's computer. The computer was turned over to the CID computer forensics unit for processing and analysis. A forensic examination of this computer confirmed that it contained *inter alia*, five images of children under the age of 18 engaged in prohibited sexual acts.

## Procedural History:

After the December 4, 2013 check of Appellant's computer, the Appellant was charged with the crimes of: Sexual Abuse of Children- Possession of Child Pornography[1] (4 counts) and Criminal Use of Communication Facility [2]. On August 20, 2014, the Informations were filed against the Appellant. On July 21, 2014, a Preliminary Hearing was conducted by Magistrate Jack D. Lippart in Prospect Park, Pennsylvania District Court and the Appellant was held on the above charges. On August 20, 2014, Joseph A. Malley, Esquire, filed an Entry of Appearance on behalf of the Appellant. On October 3, 2014, Mr. Malley filed a Petition for Leave to Withdraw as Counsel and it was granted by order dated December 29, 2014. On February 20, 2015, an order was entered appointing Mr. Douglas L. Smith, Esquire, to represent the Appellant at trial. On March 6, 2015, an omnibus pretrial motion was filed by the Appellant. On August 11, 2015, the Court ordered that after a review of CYS records, the redacted CYS records were provided to both parties.

On May 27, 2015 the Commonwealth filed a "Motion to Admit Evidence under Pa.R.E. 404(b)". A hearing was held on the Motion and on September 8, 2015, it was denied. However, the court clarified in the order that if the Appellant "opens the door" at trial, the prior conviction may be admitted into evidence to rebut any false inferences raised by the Appellant or his witnesses. (See order filed September 9, 2015).

On August 26, 2015, the Appellant filed a "Motion in Limine" seeking to prohibit the Commonwealth from introducing evidence of the Appellant's prior conviction and the home visit by the parole officer and that the possession of a computer or the alleged images were a violation of his supervision. After a hearing held on September 8, 2015, the court ordered that the Motion was granted in part and denied in part. The court granted the Motion in that the Commonwealth was

---

[1] 18 Pa.C.S. § 6312(d)
[2] 18 Pa.C.S. § 7512(a)

3

prevented from presenting testimony that the computer in question was seized during the home visit by members of the probation and parole office as this information would be prejudicial and denied the Defendant his presumption of innocence. However, the Motion was denied in part, in that the Commonwealth was allowed to illicit testimony that the Appellant was under court supervision at the time of the seizure of the computer. This information aided the jury in understanding why a parole officer was in the Appellant's home at the time of the alleged crime. To rule otherwise, would mislead the jury to conclude that the Commonwealth was conducting an illegal search and seizure. A "sanitized" version of the relevant facts removed the prejudice to the Appellant.

Further, count two of Appellant's Motion in Limine was denied. The criminal complaint filed in this matter alleged the Defendant viewed and possessed nine images of child pornography. After hearing testimony at the District Court level, the District Justice determined that four images constituted sufficient evidence of possession of child pornography. The Commonwealth filed an information charging the defendant with the four counts of the alleged possession of child pornography and one count of criminal use of communication facility. The Appellant sought to prohibit the Commonwealth from soliciting testimony or introducing evidence of the alleged images of child pornography that were not part of the substance of the four counts of possession of child pornography.

The court found the Commonwealth's argument compelling as to the fifth image and it was deemed to be admissible at trial. The fifth image depicts a child fully clothed but clearly performing a sexual act. The Commonwealth outlined that the four charged images are lewd exhibitions, whereas the fifth image depicts a child engaged in a sexual act. The Commonwealth argued that this image was needed in order to prove an element of the crime charged namely child pornography. The

fifth image provided evidence of the intent element of the crime charged and was permitted. (See order filed September 9, 2015) (see discussion *infra* at 3B).

On September 10, 2015, Appellant was convicted after a two-day Jury Trial. He was found Guilty of all charges: Sexual Abuse of Children-Child Pornography[3] (4 counts) and Criminal Use of Communication Facility (1 count).[4] Prior to sentencing, the court ordered a County Pre-Sentence Investigative Report and psychosexual evaluation. (N.T. 9/10/15 p.183). Prior to sentencing, the Commonwealth notified the Appellant pursuant to 42 P.S. 9795.3 that counts one through four involve a mandatory 25-year minimum sentence pursuant to the recidivist statute because of the Appellant's prior conviction for Possession of Child Pornography, and so the minimum sentence that the court could impose was 25 to 50 years SCI. (N.T. 12/7/15 p.4).

On December 7, 2015, Appellant was sentenced as follows: Count 1, Sexual Abuse of Children- Possession of Child Pornography, 25 to 50 years SCI, no RRRI eligibility, provide a DNA sample; Count 2, Sexual Abuse of Children-Child Pornography, 25 to 50 years SCI, concurrent to Count 1; Count 3, Sexual Abuse of Children-Child Pornography, 25 to 50 years SCI, concurrent to Counts 1 and 2; Count 4, Sexual Abuse of Children-Child Pornography, 25 to 50 years SCI, concurrent to Counts 1,2 and 3; Count 5, Criminal Use of Communication Facility, 12 to 24 months SCI to run consecutive to counts 1 through 4; five years consecutive state probation supervision by the sex offender unit special rules regarding sex offenders; Lifetime Megan's Law registration, credit time to be determined by the State Board; computer and storage media not to be destroyed pending the outcome of all the Appellant's appeals. (N. T. 12/7/15 pp.19-20).

On January 6, 2016, Appellant filed a timely Notice of Appeal to the Superior Court of Pennsylvania from his Judgment of Sentence. On February 1, 2016, Appellant filed a "Petition for Enlargement of

---

[3] 18 Pa.C.S. §6312(d)
[4] 18 Pa.C.S. §7512(a)

5

Time to Comply with 1925(b) Statement of Errors Complained of on Appeal". It was granted. On March 3, 2016, the Petitioner, through counsel, filed a "Statement of Matters Complained of on Appeal," raising the following issues for appellate review:

1. Defendant's verdict was against the weight of the evidence for the following reasons:

A. There were only 4 photographs found out of thousands of images on this computer. There was testimony as to its "thousands of pages of information" on its 300 gigabyte hard drive. (NT 9/9/15 at 176-177) Further, there was no documentation on the computer with defendant's name on it or listing him as owner of the computer. In fact the original search by witness Tillotson documented the owner as SCHMELSEorg;hp and that Windows was installed as far back as 1/1/70 (Id at 86)[5];

B. There was evidence of the ability of defendant to have inadvertently been directed to child pornographic cites [sic] from regular adult pornographic cites and/or pop-ups appearing thereon which appeared in the computer's history.

C. There was clear evidence of the ability of others to have accessed the computer due to the fact that defendant's house was for sale and realtors and potential buyers had been coming and going from the residence being shown for sale.

D. The Commonwealth introduced inconsistent, inaccurate and incomplete reports by witnesses (Id at 82) as well as evidence that Clarissa Tillotson, the initial person viewing the computer in the residence, who did not even see any child pornography thereon. (Id at 88, 91) Witness Jeff Roney similarly did not see any evidence of child pornography when he viewed the computer. (Id at 106) Witness Edmond Pisani testified the computer analyst Evans report documenting "not finding": any videos of any apparent child porn, photos of teens and pre-teens involving nudity, stored or saved child porn websites or photos nor paying for or purchasing child porn. Further, many images were of his family and children. (Id at 138-146)

E. There was the possibility of tampering and/or changes made to the contents of the computer due to the lack of establishing proper storage and chain of custody since its seizure occurred on 12/3/13, no dates and times being on evidence log, first report documenting same made on 12/6 and application of search warrant being done on 12/18. (Id at 111-116)

F. Witness Det. Mark Bucci testified that out of the 4 categories they analyze for child pornography cases, the four pictures taken out of the "couple thousand" images on this computer including family pictures were in the lowest category of "questionable or of concern" and not in higher categories of apparent and notable child porn or pictures in the young or mid-adolescent range. (Id at 35-38). He further elaborates that he does not know what websites the four pictures

---

[5] The 9/9/15 reference is an invalid cite.

came from, what date they were viewed on, nor who viewed them. Id at 58-61. The pictures were described as being in a "gray area" as well as "grainy." Id at 62- 65.

2. Defendants minimum mandatory sentence of 25 to 50 years was improper due to the jury not making a factual finding on the verdict slip as to any prior conviction for possession of child pornography. The trial court also gave an excessive sentence in regard to giving defendant consecutive time on his secondary offense.

3. The court erred in various evidentiary and trial rulings leading to the introduction of prejudicial and/or irrelevant evidence as follows:

A. Allowing reference to problematic cites and other locations on the computer and not just where the actual 4 photographs were found (NT 9/9/15 at 77) as well as testimony on titles of "teen movies." (Id at 72). Also allowed testimony of Edmond Pisani as to word searches involving pre-teen which led to "400 hits." Id at 133; On cross examination of defendant, the DA referenced numerous child pornographic websites which had not been documented or testified to up to that point nor did prior testimony establish the 4 photos in question were found or downloaded from these websites nor was he charged with viewing these websites. Id at 107-110,113

B. Allowing the admission and jury viewing of a 5th image which was not child pornography which prejudiced defendant;

C. Not requiring the Commonwealth to produce the actual computer and images thereon and also allowing the copy of photos to be shown and admitted without a proper chain of custody of the computer itself after seizure (Id at 106) nor even establishing an actual date thereon of when the photos may have been downloaded and/or viewed. Sgt. John Kelly also references getting the computer from Jeff Roney but that there was no date and time as to when it was logged into evidence. (Id at 111)

D. The court allowed prejudicial comments to be made by the District Attorney in opening and closing statements. (NT 9/8/15 at 56-60); (NT 9/9/15 at 146) The DA states his personal belief in regard to defendant finding the photos not distasteful. Id at 153.

E. The court though previously entering in order to preclude mention of Defendant's prior conviction for child pornography, allows same in under 404(b) (Id at 118-120) and further instructs the jury at one point that it may not be used as substantive evidence of guilt and then re-instructs at the close of trial that they may so use it, confusing the jury in regard to same. (Id at 122, 165).

7

# DISCUSSION:

## I.   APPELLANT'S GUILTY VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE

Appellant's first issue raised on appeal alleges that the verdict was against the weight of the evidence for six different reasons.

**Standards governing weight of the evidence:**

A true and genuine weight of the evidence challenge "concedes that sufficient evidence exists to sustain the verdict." Commonwealth v. Murray, 597 A.2d 111, 115 (Pa. Super. 1991) (*en banc*) (Olszewski, J., concurring and dissenting), (citing Commonwealth v. Taylor, 471 A.2d 1228, 1230 (Pa. Super. 1984)). However, within this admittance, an Appellant questions which evidence is to be believed -thus, in effect, the weight to be accorded the testimonial evidence. Armbruster v. Horowitz, 744 A.2d 285, 286 (Pa. Super. 1999) aff'd, 572 Pa. 1, 813 A.2d 698 (2002).

The standard of review for weight of the evidence challenges is as follows:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751–52 (Pa. 2000); see also, Commonwealth v. Cousar, 928 A.2d 1025, 1036 (Pa. 2007) (a verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice). The weight given to the direct and circumstantial evidence at trial is a choice for the factfinder. Commonwealth v. West, 937 A.2d 516, 521 (Pa. Super. 2007).

The Superior Court has often emphasized that it is not only a "trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was

8

against the weight of the evidence and resulted in a miscarriage of justice." Frisina v. Stanley, 185 A.2d 580, 581 (Pa. 1962). A new trial should not be granted because of mere conflict in testimony or because a court on the same facts would have arrived at a different conclusion. Thompson v. City of Philadelphia, 493 A.2d 669, 672 (Pa. 1985). A new trial should only be "awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Mammoccio v. 1818 Market Partnership, 734 A.2d 23, 28 (Pa. Super. 1999).

It is the duty of an appellate court to give the gravest consideration to the findings and reasons advanced by the trial judge. *See* Widmer, *supra*. A reviewing court "will not reverse the denial of a new trial, unless there was a clear abuse of discretion or an error of law which controlled the outcome of the case...." Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. Super. 1994). "One of the least assailable reasons for granting [or denying] a new trial is the lower court's conviction that the verdict was [or was not] against the weight of the evidence and that new process was [or was not] dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action." Id. at 1189-90. In determining whether or not the grant of a new trial constituted an abuse of discretion, the entire record must be reviewed. Id. at 1190.

> An appellate court by its nature stands on a different plane than that of a trial court. Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record. Because of this disparity in vantage points an appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of the trial judge. Rather our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. Id.

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence...." Id. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion. Id. In this case, the evidence was of sufficient weight to support the jury's finding of guilt.

In the case *sub judice*, the Court finds no merit in Appellant's claim that the verdict rendered was so contrary to the evidence presented as to shock one's sense of justice. The jury had the opportunity to observe all the witnesses and evidence presented by both the Commonwealth and Appellant during the course of this two-day trial. It was the duty of the factfinder to assess the credibility of each witness and weigh the evidence presented. Here, the jury pursuant to this duty found that the Commonwealth's witnesses testified credibly that Appellant possessed Child Pornography and Criminally used a Communication Facility.

When Parole Officer Carissa Tillotson performed her Field Search of the Appellant's computer, she brought up a list of websites, with names like "illegalpussey.com" (C-2). The sites were visited from June 1, 2013 almost continuously until December 2, 2013. Ms. Tillotson found the list of teen movies on his computer that she observed in his history when they conducted the search. She turned the computer into the supervisor of probation, Mr. Roney. He verified what she had found and turned it over to the experts, Detectives Pisani and Walsh, through Sgt. Kelly, the supervisor with CID. The Appellant's computer had the word "teen" all throughout the Web history, with 400 hits for the words "preteen" and "pre teen" that Detective Pisani found when he searched Appellant's computer. (N.T. 9/9/15 p.133). Finally, Dr. Messum testified to a reasonable degree of medical certainty that the five images shown to the jury were children. They were minors. The Commonwealth established that the five images in question were found on the Appellant's computer. The jury viewed five images and found the Appellant guilty beyond a reasonable doubt

10

that he possessed images that fit the definition that the court provided in its final instructions for the two crimes charged. Therefore, the jury's determination should be left undisturbed.

A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa. Super. 1995); *Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007). A new trial should not be granted because of a mere conflict in the testimony or because the trial judge, on the same facts, would have arrived at a different conclusion. *Commonwealth v. Widmer, supra; Commonwealth v. Vandivner*, 962 A.2d 1170, 1178 (Pa. 2009). A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror, because a trial judge cannot sit as the thirteenth juror. Id. Rather, the role of the trial judge is to determine that, notwithstanding all of the facts, certain facts are so clearly of greater weight, that to ignore them or to give them equal weight with all of the other facts, would deny justice. *Id.;* See also *Commonwealth v. Brown*, 648 A.2d 1177 (Pa. 1994). In doing so, the trial court is under no obligation to view the evidence in a light most favorable to the Commonwealth, as the verdict winner, because a motion for a new trial on the grounds that the verdict is against the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. *Widmer, supra*. The granting of a new trial is reserved only for those extraordinary cases in which the verdict is so contrary to the weight of the evidence that it is shocking to one's sense of justice. *Id.*

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of

acquittal that a guilty verdict shocks one's sense of justice. *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013).

In reviewing the record in this case, the evidence presented was straightforward and compelling. It met the burden of proving all the elements of the crimes charged beyond a reasonable doubt. The court determines that the verdict was not against the weight the evidence and the Jury did not render a decision shocking to the conscience, such as to require a new trial. Therefore, no new trial should be granted on these grounds. Accordingly, this court concludes that Appellant's claim is without merit.

**1.A.   Appellant argues that there were only 4 photographs found out of thousands of images on this computer. There was testimony as to its "thousands of pages of information" on its 300 gigabyte hard drive. (NT 9/9/15 at 176-177)**

Appellant contends that there were only 4 photographs found out of thousands of images on his computer. As noted above, the weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact ... thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense justice. *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa. Super. 2005). It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. *Commonwealth v. Guest*, 456 A.2d 1345, 1347 (Pa. 1983).

The jury found that the 4 images met the legal definition of Possession of Child Pornography. A weight of the evidence claim concedes that the evidence was sufficient to sustain the verdict. Appellant appears to be suggesting that it was error for the jury to convict him based upon some analysis of the percentage of images on the computer. This argument is specious at best. The

12

court finds that the jury's verdict of guilt as to four counts of Child Pornography based upon 4 photographs/images was supported by the weight of the evidence.

**1.A. Appellant argues that he was not listed as the owner of the computer on the Field Search Report. Further, there was no documentation on the computer with defendant's name on it or listing him as owner of the computer. In fact the original search by witness Tillotson documented the owner as SCHMELSEorg;hp and that Windows was installed as far back as 1/1/70 (Id at 86)**

Appellant contends that the Commonwealth failed to prove that he was the owner of the computer. He asserts: "the original search by witness Tillotson documented the owner as SCHMELSEorg.hp and that Windows was installed as far back as 1/1/70 (Id at 86)". Legally, whether Appellant was the owner of the computer is of no consequence. The Appellant was charged with 18 P.S.§ 6312- Possession of Child Pornography, which requires knowingly possessing or controlling child pornography, there is no requirement in the statute that the Appellant own the computer.

In addition, Appellant's assertion that there was evidence of another owner of the computer is factually incorrect. The Field Search Report, Exhibit C-2, that was generated by Probation Officer Carissa Tillotson had markings on it in the upper right hand corner. The Appellant fails to fully reference all of the information at the top of C-2. It provides: **"ProductID [the product being the Commonwealth's search software]**: Owner: schmelse, Organization: HP Windows Installed Date: 1/1/1970 12:00 AM".

The information referenced in the upper right hand corner relates to the software company for "Field Search" that Ms. Tillotson used. (N.T. 9/9/15 p.72). The reference is not to the computer itself but to the software that the Commonwealth used to conduct the search of the Appellant's computer. When questioned about the information in the upper right hand corner of C-2 on cross-examination, Ms. Tillotson explained:

13

Q. Okay. Now a little way down it says owner;, do you see that?

Q. Who is the owner of that computer?

A. This is something that's generated from the software that is not specifically geared toward each computer...

A. Again, this is something that is just standard generated by the Field Search software itself.

(N.T. 9/9/15 p.86).

Ultimately, that information is of no moment as the Appellant agrees on cross-examination that the computer seized from his home by the probation officers is his. "Q. And when they took that device from you and they gave you the receipt did the receipt –did the information on the receipt match the information on the device? A. Yes." (N.T. 9/10/15 p.105).

**1B. Appellant argues that evidence existed that Appellant was inadvertently directed to child pornographic cites from regular adult cites [sic]**

The Appellant admitted to his Probation Officer, Mr. Taylor, that he had viewed adult pornography while on probation for his first offense. (N.T. 9/10/15 p.7). He also admitted viewing adult pornography on cross examination. (N.T. 9/10/15 p.113). However, there was no evidence before the court that the Appellant was "inadvertently directed" to child pornographic sites from regular adult sites.

The Commonwealth's computer forensic expert, Mr. Joseph Walsh, testified:

> [i]f a banner ad appears on a website the user would have to click on the banner ad in order to go to that website. And only when they go to that website would it actually appear in visited sites. So visited sites are websites or URL's that were actually requested by the computer...

(N.T. 9/10/15 p.21). Therefore, the only sites listed in the Field Search Report would be sites that were actually visited not banner ads or popups etc.

In addition, the Appellant admitted on cross-examination that he was never inadvertently directed to child pornographic sites from regular adult sites. "Q. You heard your attorney question

14

the two experts that I presented, Detectives Pisani and Walsh, about ads, and popups, and things that come up when you click certain things? A. Sure. Q. Did that ever happen to you? A. **No No.**" (N.T. 9/10/15 p.111).

## 1C. There was no clear evidence of the ability of others to have accessed the computer

The Appellant asserts that "there was clear evidence of the ability of others to have accessed the computer due to the fact that defendant's house was for sale and realtors and potential buyers had been coming and going from the residence being shown for sale." The Appellant does not point to any evidence of the ability of others to access his computer.

The Appellant's assertions are vague and overly broad and no specific questions are raised for appeal. Whenever a trial court orders an Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b), any issue not raised in an Appellant's Rule 1925(b) statement will be deemed waived for purposes of appellate review. *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803 (Pa. Super. 2007). If a Pa.R.A.P. Rule 1925(b) statement is too vague, the trial judge may find waiver and disregard any argument. Pa.R.A.P. 1925(b)(4)(ii). See also, *Lineburger v. Wyeth*, 894 A.2d 141 (Pa. Super. 2006). Therefore, 1C should be waived.

Assuming *arguendo* that there is no waiver, Appellant argues that others had access to his computer because the house was for sale and there was a lockbox on the front door and the realtor had access from July 2014 until February 2015. He asserts that somebody could have come in his home from the lockbox, logged on to his computer, and viewed child pornography. However, the Commonwealth's Attorney questioned the Appellant about the ability of others to access his computer due to the fact that his house was for sale at this time. He admitted he lived alone. (N.T. 9/10/15 p.105). He would have been home 24/7, beginning on November 12, 2013, because he was

serving his minimum sentence for a guilty plea entered (for Child Pornography and Criminal use of a Communication Facility) on electric home monitoring. When cross-examined about the Field Search Report completed by Ms. Tillotson, C-2, which indicated child pornography sites were viewed on November 8, 2013 at 3:28 AM, he admitted "I was probably home." (N.T. 9/10/15 p.107).

> Q. Okay. So the first website that was visited on your computer, 24/7 sexy teens.com indicates create date November 8, 2013 at 3:28 a.m., access date the same date and time. Do you see that?
> A. Yeah. Sure.
> Q. Are you suggesting that somebody came in through the lockbox key was on your computer—
> A. I'm just saying that I did not do it.
> Q. Okay. So if someone else was in your house looking at these websites on your computer are you suggesting they would've done it on June 2, June 4, June 1--... July 30, October 29, November 21, November 23, November 8, November 27, December 2, August 29? All these various dates people were accessing your computer looking at child porn?
> A. No, sir.

(N.T. 9/10/15 p.108). There is no clear evidence of the ability of others to access the Appellant's computer. On the contrary, the Appellant admits on cross examination that on the dates indicated on the Field Search Report other people were not accessing his computer viewing child porn.

**1D. Appellant contends that "the Commonwealth introduced inconsistent, inaccurate and incomplete reports by witnesses (Id at 82)"**

The Appellant argues that the Commonwealth introduced inconsistent, inaccurate and incomplete reports by witness Clarissa Tillotson and cites to N.T. 9/9/15 p. 82. The only inaccurate evidence on p. 82 was Ms. Tillotson writing a report after her visit to Appellant's home, and she indicated the date was December 2, 2013. On cross-examination she admitted that it was a clerical error and in fact she had visited the Appellant's home on December 3, 2013. This is not a substantive inaccuracy. In addition, she admits that she never dated her report from the visit to the Appellant's home. The report was admitted into evidence, without objection, as C-1. (N.T. 9/9/15 p. 91). There is

16

certainly no requirement that she date her report. This is a frivolous argument and should be dismissed.

The Appellant's next argument is that Ms. Tillotson "did not even see any child pornography" on the Appellant's computer. Ms. Tillotson testified that she used a removable thumb drive device to conduct a compliance check on the Appellant's computer. (N.T. 9/9/15 pp. 72-73). Exhibit C-2 was the report generated as a result of her search of the computer. It is a summary of the internet history. As she reviewed the websites in the internet history, they had names like: "24/7 sexy teens.com", "3daughtersdesires.com", and "allsexy teens.net". Once Ms. Tillotson found the incriminating list she completed her report and shut down the computer. She transported the computer to adult probation and parole and stored it in the evidence room. Once stored, other individuals took it from there to conduct additional investigation upon the computer. (N.T. 9/9/15 pp. 72- 80).

When Ms. Tillotson was asked on cross-examination whether she observed any pictures or images of child pornography, she replied: "I did not click on any of the internet history simply because that could possibly re-create a date. So you don't click on the actual internet history." (N.T. 9/9/15 p. 88). So, there was a logical reason why Ms. Tillotson testified that she did not view child pornography on the computer. She was following protocol and making certain that she did not tamper with evidence.

As to the assertion that Commonwealth's witness Jeff Roney did not see any evidence of child pornography, it is a mischaracterization of Mr. Roney's testimony. He testified as to his role in the investigation of the Appellant's computer:

> ... My PO's brought me back evidence. I reviewed the computer. Found similar evidence. Typed some of those websites in, confirmed what they, you know, my belief was that that computer may have contained child pornography based on what I

17

saw by retyping in those websites onto my computer. At that point I stopped everything, took the evidence we had and turned it over to the Delaware County Criminal Investigation Division.

(N.T. 9/9/15 p.105).

As to the assertion that Commonwealth's witness Edmond Pisani testified that there was no child pornography on the Appellant's computer, again, it is a mischaracterization of his testimony. Mr. Pisani was admitted, without objection, as an expert in the field of computer forensics examination. (N.T. 9/9/15 p.124). He testified that the forensic search of Appellant's computer yielded over 400 hits on the hard drive for the words "preteen" and "pre teen" related to child pornography websites. (N.T. 9/9/15 p.133-34). Mr. Pisani testified that Computer Analyst Evans did not find any videos of any apparent child pornography. (N.T. 9/9/15 p.139). The Appellant was not charged with viewing child pornography videos. Mr. Pisani testified:

> Q. when you're doing these hits per preteen and teen, is it fair to say that you found some non-nude preteens on his-- on the computer?
> A. there were some that indicated that that had in the URL. That's correct.
> Q. Okay. And what do you characterize as preteen?
> A. anything under the age of 13.
> Q. okay. And did you find any nudity under the age of 13 in your search?
> A. we didn't find any apparently child pornography, correct.[sic]

(N.T. 9/9/15 p.141). In summary, his testimony was that there was no nudity of children under the age of 13. In addition, Mr. Pisani testified that there were no separate files on the computer created to view child pornography. (N.T. 9/9/15 p.144). Again, this is of no consequence as the Appellant was charged as to five images admitted into evidence as C-9, C-10, C-11, C-13 and C-14. (N.T. 9/10/15 p.49, 80).

**1E. Appellant contends that there was the possibility of tampering and/or changes made to the contents of the computer due to the lack of establishing proper storage and chain of custody since its seizure occurred on 12/3/13, no dates and times being on evidence log, first report documenting same made on 12/6 and application of search warrant being done on 12/18. (Id at 111-116)**

Appellant cites to the testimony of Sgt. John Kelly, a detective sergeant with the Criminal Investigation Division, and claims there was a lack of establishing proper storage and chain of custody. To the contrary, Sgt. Kelly outlines proper storage and chain of custody. Sgt. Kelly testified that C-3 is the document that indicates the date and time that the laptop was provided to him, which was on December 6, 2013. (N.T. 9/915 p.112). Once he received the computer, he placed it into evidence and started to make application for a search warrant so that the forensic examiners could search the computer and do a forensic exam on it. As part of preparing the search warrant, Sgt. Kelly reviewed the report provided to him by Ms. Tillotson containing the details of what she saw and then what was confirmed by Mr. Roney.

Sgt. Kelly obtained a search warrant. Then, he arranged for the laptop to be transferred to the forensic lab to be examined by one or more experts in computer forensics. This was done all within the confines of the Delaware County Criminal Investigation Division. Sgt. Kelly also testified that he did not do anything to the laptop that in any way would have changed, altered, or added anything to it. He placed the computer in the locked "icat" file cabinet, to which he had the key. He testified that the laptop was in his possession from when it came from Mr. Roney until he turned it over to the forensic examiners and testified that nothing at all was done to the laptop. (N.T. 9/915 pp.111-116).

There is nothing in the cited testimony that indicates the possibility of tampering and/or changes made to the contents of the computer. While the Commonwealth bears the burden of demonstrating some reasonable connection between the proffered exhibits and the true evidence, *Commonwealth v. Pedano,* 266 Pa. Super. 461, 467, 405 A.2d 525, 528 (1979), it need not establish

19

the sanctity of its exhibits beyond a moral certainty. *E.g., Commonwealth v. Miller,* 234 Pa. Super. 146, 155, 339 A.2d 573, 578 (1975), *aff'd,* 469 Pa. 24, 364 A.2d 886 (1976).

Physical evidence may be admitted at trial without the Commonwealth demonstrating to an absolute certainty the precise chain of custody. *Commonwealth v. Culmer,* 604 A.2d 1090 (Pa. Super. 1992).

The Commonwealth need not produce every individual who came into contact with an item of evidence, nor must it eliminate every hypothetical possibility of tampering. *Commonwealth v. Rick,* 244 Pa. Super. 33, 38, 366 A.2d 302, 304 (1976).

> **A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial.**

*Commonwealth v. Oates,* 269 Pa. Super. 157, 163, 409 A.2d 112, 115 (1979)(emphasis added); *Commonwealth v. Miller, supra.* The law is clear that physical evidence may be properly admitted despite gaps in testimony regarding its custody. Any gaps in testimony regarding the chain of custody go to the weight to be given the testimony, not to its admissibility. *Commonwealth v. Bolden,* 406 A.2d 333, 335-36 (Pa. 1979). *Commonwealth v. Cugnini,* 452 A.2d 1064, 1065 (Pa. Super. 1982).

Sgt. Kelly's testimony, and the Commonwealth's Exhibits related to chain of custody, were sufficient to allow a fact finder to infer that the evidence seized was not altered or tampered-with during the period of time from the seizure through the time of trial. Moreover, Sgt. Kelly's testimony established an unbroken chain of custody from the time the computer was seized by the probation officers, through obtaining a search warrant, examination by the forensic examiners, until the time of trial. As such, Appellant's claim is meritless.

20

**1F. Appellant contends that Detective Bucci testified that out of the 4 categories they analyze for child pornography cases, the four pictures were in the lowest category of "questionable or of concern" and not in higher categories of apparent and notable child porn or pictures in the young or mid-adolescent range.**

The Commonwealth's witness, Detective Mark Bucci, of the Delaware County Criminal Investigation Division, testified that of the images of nude young people extracted from the Appellant's computer, a pediatrician was employed to look at those images, and determined that five of the images were of children. (N.T. 9/10/15 p.38). Detective Bucci testified that he did not do the analysis "as far as what website they came from." He explained:

> ...in order to be able to do that it would take the forensic unit to employ whatever tools they have to be able to go further into the examination of the computer. From what I understand, the photos that were recovered were photos that had been deleted from the hard drive or from—they were deleted from the file. They were still on the hardrive.

(N.T. 9109/15 p.59). The Detective testified on cross-examination that graininess is caused by "pixilation of the image", and also by expanding the image too much. (N.T. 9/9/15 p.65).

Ultimately, the jury convicted the Appellant of Child Pornography and Criminal Use of a Communication Facility based upon a medical expert's testimony that the five images were of children. Dr. Messum testified to a reasonable degree of medical certainty: "[m]y medical opinion is that all 5 of the children in these photographs are under the age of 18". (N.T. 9/10/15 p.76). It is of no consequence that the Detective testified that these 5 photos were in the lowest category of "questionable or of concern" and not in higher categories of apparent and notable child porn.

**2A.    Appellant contends that the mandatory minimum sentence of 25 to 50 years was improper due to the jury not making a factual finding on the verdict slip as to any prior conviction for possession of child pornography.**

The Appellant was sentenced pursuant to 42 Pa.C.S.§ 9718.2, which provides in pertinent part:

(a) Mandatory sentence.--Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary...

The United States Supreme Court in *Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013), held that any facts leading to an increase in a mandatory minimum sentence are elements of the crime and must be presented to a jury and proven beyond a reasonable doubt. However, in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court stated that **the fact of a prior conviction does not need to be submitted to a jury and found beyond a reasonable doubt**. *Id.* at 1232. (emphasis added). The *Alleyne* Court explicitly noted that *Almendarez–Torres* remains good law, and is a narrow exception to the holding of *Alleyne*. *See Alleyne*, 133 S.Ct. at 2160 n. 1. Therefore, as the law currently stands, the imposition of a mandatory minimum sentence based on a prior conviction is not unconstitutional. *Commonwealth v. Pennybaker*, 121 A.3d 530, 534 (Pa. Super. 2015).

Here, the Jury did not need to make a factual finding on the verdict slip as to Appellant's prior conviction for Possession of Child Pornography and Criminal Use of a Communication Facility. The Commonwealth handed up a Stipulation (Exhibit C-15) evidencing Appellant's prior conviction of the two charges on November 12, 2013. (N.T. 9/10/15 p.121). Moreover, as the Pennsylvania Supreme Court noted in *Commonwealth v. Gordon*, 942 A.2d 174, 183 (Pa. 2007) where the judicial finding is the fact of a prior conviction, submission to a jury is unnecessary, since

22

the prior conviction is an objective fact that initially was cloaked in all the constitutional safeguards, and is now a matter of public record. *Id.*

**2B. Appellant also contends that the trial court gave an excessive sentence in regard to giving Appellant consecutive time on his secondary offense.**

Appellant also contends that the court gave him an excessive sentence. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010). Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). *See Commonwealth v. Hoag*, 445 Pa. Super. 455, 665 A.2d 1212 (1995) (stating an Appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently).

The Appellant was sentenced to Count 1, Sexual Abuse of Children-Possession of Child Pornography, 25 to 50 years SCI, with the remaining three counts running concurrent to one another; and as to Count 5, Criminal Use of Communication Facility, 12 to 24 months SCI, to run consecutive to counts 1 through 4. The Criminal Use of Communication Facility is a different crime and does not merge. The court acted well within its discretion. Appellant's argument is meritless.

**3. Appellant contends that the court erred in various evidentiary and trial rulings leading to the introduction of prejudicial and/or irrelevant evidence as follows:**

**A. Allowing reference to problematic cites [sic] and other locations on the computer and not just where the actual 4 photographs were found (N.T. 9/9/15 at p.77) as well as testimony on titles of "teen movies." (Id at 72). Also allowed testimony of Edmond Pisani as to word searches involving pre-teen which led to "400 hits" Id at 133; On cross examination of defendant, the DA referenced numerous child pornographic websites which had not been documented or testified to up to that point nor did prior**

**testimony establish the 4 photos in question were found or downloaded from these websites nor was he charged with viewing these websites. Id at 107-110,113**

To preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise an objection results in waiver of the underlying issue on appeal. *Commonwealth v. Charleston*, 16 A.3d 505 (Pa. Super. 2011). Defendant's failure to raise a contemporaneous objection to evidence at trial waives such a claim on appeal. *See* Pa.R.Crim.P. 302(a); *see also Commonwealth v. Bryant*, 855 A.2d 726, 741 (Pa. 2004) (failure to raise contemporaneous objection to evidence at trial waives claim on appeal).

In the case *sub judice*, Appellant failed to preserve this claim for appeal as he did not object to the witness' statements at trial and raises this argument for the first time on appeal. *See* Pa.R.A.P. 302(a) (stating "issues not raised in trial court are waived and cannot be raised for first time on appeal"). Accordingly, this argument is waived. Id., *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa. Super. 2013) (noting that "[e]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver").

Moreover, defense counsel would have had no basis for an objection to testimony about the list of visited sites which resulted from the Probation Officer's Field Search Report. The Field Search Report was admitted into evidence without objection as C-2. (N.T. 9/9/15 p.91). The Probation Officer testified that C-2 was the report that was generated as a result of her search of the Appellant's computer. It is a summary of the internet history that was on the Appellant's computer. (N.T. 9/9/15 p.76). The Field Search Report is part of the history of the case as testified to by the Probation Officer, Ms. Tillotson. (N.T. 9/9/15 pp.71-81).

24

Appellant also objects to the District Attorney cross-examining him about websites that the Commonwealth's witnesses testified to, which were part of the internet history of the Appellant's computer. The Appellant cites to the following questioning:

> Q. Okay. So the first website that was visited on your computer, 24/7sexy teens.com indicates create date November 8, 2013 at 3:28 a.m., access date the same date and time. Do you see that?...

(N.T. 9/10/15 p.107). The Deputy District Attorney also asks him about another site "babesideal teens.com". Again, these references are from Exhibit C-2, the Field Search Report, which was downloaded from the Appellant's computer. (N.T. 9/9/15 p.76).

Appellant contends that the references to "problematic cites [sic]", as quoted above, "had not been documented or testified to up to that point". This assertion is patently false. Ms. Tillotson testified that these "problematic" sites were downloaded from the Appellant's computer's history, (N.T. 9/9/15 p.76). The Appellant's attorney cross-examined Ms. Tillotson about the child pornographic websites in C-2:

> Q. Okay. And when you have these sites and let's go to-- let's just start with number 1, 24/7sexyteens.com, it says it was created and accessed on 11/8/2013 and then there's a time attached to it, correct?
> A. Yes.
> Q. And each one of these 85 different sites that you have on here, they all have a time, a date for both created and accessed, correct?
> A. Correct.
> Q. Okay. Do you have any direct knowledge who created and accessed those sites at the time and date as specified in your Field Search report?
> A. I can't testify to that.

(N.T. 9/9/15 p.88).

In addition to Ms. Tillotson's testimony, the defense attorney cross-examined the Commonwealth's forensic witness about these "problematic" sites. Mr. Smith, Esquire, cross-examined the Commonwealth's witness, Detective Bucci as follows:

> Q. All right. Detective Bucci, you've seen this document before, C-2?

25

A. Yes.

Q. And that's the Field Search Report that Carissa Tillotson prepared when she did her field search on December 3, 2013—

A. Okay.

Q. –correct?

A. Yes.

Q. And it lists-- it's titled here visited sites and it lists some 85 sites. And some of them clearly have the name or the word teen, or daughter, or something to that effect, right? There's a number of those site[s] among the 85, correct?

A. Yes.

Q. Can you testify that any of those five pictures, any of those five images, came from any of the sites that are listed on C-2?

A. No, I'm not able to testify to that. I did not do that analysis.

(N.T. 9/10/15 pp.58-59). This testimony is from the cross-examination by Appellant's attorney of the Commonwealth's witness. A prosecutor may make fair comment on admitted evidence and may provide fair rebuttal to defense arguments. *Commonwealth v. Spotz,* 616 Pa. 164, 47 A.3d 63, 97 (2012); *Com. v. Sanchez,* 82 A.3d 943, 981 (Pa. 2013).

It is fair rebuttal that issues raised by the defense can be asked by the Commonwealth on cross-examination of the Appellant. Further, the Commonwealth is allowed to rebut the inference the Appellant's counsel created through this cross-examination, that the Appellant never accessed the "problematic" sites documented in C-2. Therefore, the Commonwealth had the right to ask the Appellant about the numerous child pornographic websites on his computer.

The prosecutor's questions represented a fair response to a defense tactic of portraying Appellant as someone who never accessed the "problematic" pornographic sites. The prosecutor's questions about the child pornography websites further served as rebuttal evidence that called into question Appellant's honesty as a testifying witness. Such impeachment use is clearly allowed and such fair response use is clearly permissible. *Commonwealth v. Bolus,* 680 A.2d 839 (Pa. 1996) (holding prosecutor may impeach a defendant's credibility); *Commonwealth v. DiNicola,* 866 A.2d

26

329 (Pa. 2005) (holding prosecutor may respond to defense attempts to impugn the thoroughness of the investigation by revealing defendant's lack of cooperation with the investigation).

Therefore, Appellant's objections are unfounded, and should be dismissed.

**B. Appellant contends that the court erred in "allowing the admission and jury viewing of a 5th image which was not child pornography which prejudiced defendant"**

In reviewing a challenge to the admissibility of evidence, we note that such matters are within the sound discretion of the trial court and thus, we "will reverse the trial court's decision only if the appellant sustains the heavy burden to show that the trial court has abused its discretion." *Commonwealth v. Christine,* 125 A.3d 394, 398 (Pa. 2015).

In the case *sub judice*, the criminal information charged the Appellant with four counts of Possession of Child Pornography and one count of Criminal Use of a Communication Facility. The defense did not challenge the four images that the Commonwealth alleged were child pornography, but there was an objection to a fifth image. (N.T. 9/8/15 p.4). The Appellant filed a Motion in Limine to prevent the jury from viewing the fifth image, and a Hearing was held on the Motion prior to trial. (N.T. 9/8/15 pp.3-18). The Commonwealth explained that the fifth image depicts a young girl engaged in an act that doesn't quite meet the statute as a criminal offense but goes to the intent. The child is clothed but she is doing something which is a sexual act, which demonstrates the intent element of the other four images. The court requested the Commonwealth to outline the probative value of the fifth image and the DA replied:

> The statute requires that the images be-- that are displayed either be engaged in a sexual act or a lewd exhibition. Lewd exhibition is defined further by the statute. The four additional images-- the four images which are clearly counts are... a lewd exhibition. The fifth image is actually a sex act except no nudity is depicted.

(N.T. 9/8/15 p.6). The child pornography statute provides:

27

**(d) Child pornography.--**Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

...

**(g) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Intentionally views."** The deliberate, purposeful, voluntary viewing of material depicting a child under 18 years of age engaging in a prohibited sexual act or in the simulation of such act. The term shall not include the accidental or inadvertent viewing of such material.

**"Prohibited sexual act."** Sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.

18 Pa.C.S. § 6312.

The statute requires either a lewd exhibition or a sexual act. Nudity alone is not enough. The Commonwealth alleged the four images were lewd exhibitions and the fifth image depicts a sex act. Based upon the statutory definition of "intentionally views", the fifth image meets that definition and was properly deemed admissible to establish the Appellant's intent. (N. T. 9/8/15 p.8).

The court issued a pretrial order dated September 9, 2015, and the undersigned ruled that the fifth image provided evidence of the intent element of the crime charged. The undersigned noted: "[t]he court finds the Commonwealth's argument compelling. The fifth image has evidentiary value and shall be admissible at the time of trial. Further, the court finds that the probative value of the evidence outweighs any potential prejudicial impact." (Order at number 9). Normally, the general rule is that testimony is admissible if it is relevant and competent. This basic rule is equally applicable to the admission of photographs or other types of demonstrative evidence..." *Commonwealth v. Chacko,* 391 A.2d 999, 1000 (Pa. 1978). (Order at number 10).

28

**C. Appellant contends that not requiring the Commonwealth to produce the actual computer and images thereon and also allowing the copy of photos to be shown and admitted without a proper chain of custody of the computer itself after seizure (Id at 106) nor even establishing an actual date thereon of when the photos may have been downloaded and/or viewed. Sgt. John Kelly also references getting the computer from Jeff Roney but that there was no date and time as to when it was logged into evidence. (Id at 111)**

Appellant never requested that the Commonwealth produce the actual computer that was seized from the Appellant, so this issue is waived.

Appellant has already raised the chain of custody issue above and the court has addressed this issue at 1E above.

**D. Appellant contends that the court allowed prejudicial comments to be made by the District Attorney in opening and closing statements. (NT 9/8/15 at 56-60); (NT 9/9/15 at 146). Appellant contends that the DA states his personal belief in regard to defendant finding the photos not distasteful. Id at 153.**

Initially, it should be noted that no objection was lodged during the opening or closing arguments of the Commonwealth. The lack of a request for a contemporaneous curative instruction constitutes a waiver of any claim of error. *Commonwealth v. Robinson*, 670 A.2d 616, 622 (Pa. 1995).

Assuming *arguendo* that there is no waiver, Appellant contends that the court allowed prejudicial comments to be made by the District Attorney in opening and closing statements. (NT 9/8/15 at 56-60).[6] As to Appellant's reference to prejudicial comments at: "NT 9/9/15 at 146", the alleged prejudicial comments made by the District Attorney in closing arguments were references to the titles of the sites that were visited sites on Appellant's computer. The DA commented that they were "pretty raunchy" and "distasteful". (N.T. 9/10/15 p.146).

---

[6] Initially, it should be noted that Appellant cited to: "(NT 9/8/15 at 56-60)". The notes of testimony for 9/8/15 end on p.19, so the cite does not exist.

As this comment was fair argument, this claim is meritless. *See Commonwealth v. Rios*, 920 A.2d 790, 808 (Pa. 2007) (holding that a prosecutor may make all reasonable inferences supported by the evidence).

Here, the prosecutor's remarks constituted fair comment on the evidence. The jury had heard the visited sites as listed in C-2, which included names such as "24/7sexyteens.com" and "illegalpussey.com". In closing, the prosecutor did not list the names but simply stated that they were "pretty raunchy" and "distasteful". (N.T. 9/9/15 p.146). As these comments were fair argument, this claim is meritless.

**The DA states his personal belief in regard to defendant finding the photos not distasteful. Id at 153**

The Appellant's allegation that the DA stated his personal belief in his closing argument to the jury stems from the following:

> The last thing that Mr. Smith [defense counsel] said in his opening that I'll finish with here is this. Mr. Smith told you in his opening that everybody in this court finds these images distasteful. I don't agree. We know that one person in this courtroom found these images quite appealing.

(N.T. 9/10/15 p.153).

The Appellant claims that the prosecutor improperly offered his personal opinion that the Appellant found the photos appealing. However, Appellant failed to preserve this claim for appeal as he did not object to the prosecutor's statement at trial and raises this argument for the first time on appeal. *See* Pa.R.A.P. 302(a) (stating "issues not raised in trial court are waived and cannot be raised for first time on appeal"). Accordingly, this argument is waived. *Commonwealth v. Robinson*, 670 A.2d 616, 622 (Pa. 1995); *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa.Super.2013) (noting that "[e]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver").

30

Assuming *arguendo* that there is no waiver, Appellant contends that the DA stated his personal belief in his closing arguments to the jury. However, a district attorney must have reasonable latitude in fairly presenting a case to the jury and he or she must be free to present his or her arguments with 'logical force and vigor.' *Commonwealth v. Smith,* 490 Pa. 380, 387 (Pa. 1980) (*quoting Commonwealth v. Cronin,* 464 Pa. 138 (1975)). In addition, the effect of this comment was de minimus, particularly in light of the evidence against the Appellant. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155, 165 (Pa. 1978).

With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson,* 900 A.2d 887, 890 (Pa. Super. 2006). As the Superior Court opined in *Commonwealth v. Judy,* 978 A.2d 1015, 1019 (Pa. Super. 2010), "[o]ur review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." Id at 1019 *citing Commonwealth v. Rios,* 554 Pa. 419, 721 A.2d 1049, 1054 (1998).

It is settled law that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility. *Commonwealth v. Chmiel,* 889 A.2d 501, 544 (Pa. 2005). Thus, proper examination of the comments of the District Attorney in closing requires review of the arguments advanced by the defense. As indicated, the defense in this case commented 'that everybody in this court finds these images distasteful' so the Commonwealth

was simply responding to defense arguments with logical force and vigor. The challenged comments represented permissible vigorous response to the defense. *See Chmiel*, 889 A.2d at 544.

> **E. The Appellant contends that the court though previously entering an order to preclude mention of Defendant's prior conviction for child pornography, allows same in under 404(b) (Id at 118-120) and further instructs the jury at one point that it may not be used as substantive evidence of guilt and then re-instructs at the close of trial that they may so use it, confusing the jury in regard to same. (Id at 122, 165).**

In its final argument, the Appellant admits that the court previously entered an order to preclude mention of his prior conviction for child pornography and [criminal use of communication facility]. This order was issued after a pretrial hearing on the Commonwealth's "Motion to admit evidence under Pa.R.E. 404(b)". However, the Appellant fails to note a provision in the order which reads:

> However, as to the Commonwealth's argument that the defendant's prior conviction is admissible to rebut any false inferences raised by the defendant or his witnesses, the court agrees. **If the defendant "opens the door" at trial, the prior conviction may be admitted into evidence to rebut any false inferences raised by the defendant or his witnesses....**

(Paragraph 9 of the "Order denying Commonwealth's Motion to admit evidence under Pa.R.E. 404(b)") (emphasis in the original).

The Appellant testified on cross-examination that he did not have the motive to commit the crimes charged (N.T. 9/10/15 p.114); the intent (N.T. 9/10/15 p. 115); it was a mistake (N.T. 9/10/15 p. 115); and it was not part of a plan (N.T. 9/10/15 p.115). As the court noted:

> Mr. Smith, Mr. Galantino elicited directly from the Defendant all of the criteria. Absence of mistake, intent, motive, lack of knowledge, all of them. He has elicited every one of the 404(b) exceptions directly from the testimony, directly from the mouth of the defendant. So your objection is overruled. The court is going to grant the 404(b) motion. I will then permit the admission of the defendant's prior criminal history by rebuttal testimony. (N.T. 9/10/15 p.119).

32

There was nothing in the court's ruling that did not comport with the pretrial order cautioning the Appellant that the prior conviction may be admitted to rebut any false inferences raised by the Appellant. Appellant's argument is meritless.

**Appellant contends that the court instructs the jury at one point that it may not be used as substantive evidence of guilt and then re-instructs at the close of trial that they may so use it, confusing the jury in regard to same. (Id at 122, 165).**

Appellant failed to preserve this claim for appeal as he did not object to the court's instructions to the jury and raises this argument for the first time on appeal. *See* Pa.R.A.P. 302(a) (stating "issues not raised in trial court are waived and cannot be raised for first time on appeal"). When asked if there were any objections, additions, or deletions as to the court's handling of the stipulation and the cautionary instruction to the jury, Mr. Smith replied: "No objection." (N.T. 9/10/15 p.123). Accordingly, this argument is waived. *Commonwealth v. Robinson*, 670 A.2d 616, 622 (Pa. 1995).

Assuming *arguendo* that there is no waiver, Appellant's final argument is that the court confused the jury based upon instructions given. The Appellant references the court's instructions at (N.T. 9/10/15 p.122), after Exhibit C-15 was handed up to the court, which related to a stipulation entered as to documents confirming the Appellant's prior conviction for Possession of Child Pornography and Criminal Use of Communication Facility. The court advised the jury:

> ...Now ladies and gentlemen, you have just heard evidence in the nature of the stipulation to prove that the defendant was previously convicted of the offense stated by Mr. Galantino, an offense for which he is not on trial today. This evidence is before you for a limited purpose and that is for the purpose of rebutting the testimony of the Defendant. The evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

33

(N.T. 9/10/15 p.123). The instruction given by the court mirrors the Pennsylvania standard jury instruction on the topic:

> 3.08 (Crim)   EVIDENCE OF OTHER OFFENSES AS SUBSTANTIVE PROOF OF GUILT
>
> 1.   You have heard evidence tending to prove that the defendant was guilty of [an offense] [improper conduct] for which [he] [she] is not on trial. I am speaking of the testimony to the effect that [*explain testimony*].
>
> 2.   This evidence is before you for a limited purpose, that is, for the purpose of tending to [show [*give specifics*]] [contradict *[give specifics]*] [rebut *[give specifics]*] *[give specifics]*. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

The court's closing instruction to the jury was as follows:

> Ladies and gentlemen, during the course of the trial you heard evidence tending to prove that the defendant has been previously found guilty of an offense, the one that was stated by the Commonwealth. He is not on trial for that offense. I'm speaking of the stipulation made by Mr. Galantino--agreed to by Mr. Galantino and Mr. Smith that the record would reflect a prior conviction for child pornography. Again he is not on trial for that offense, ladies and gentlemen. This evidence is before you for a limited purpose. That is for the purpose of tending to show motive, intent or absence of mistake. This evidence must not be considered by you in any way other than for the purpose I have just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

(N.T. 9/10/15 p.165). These are not conflicting instructions. The two instructions mirror the language in the Pennsylvania standard jury instructions.

When evaluating jury instructions, the appellate courts must consider whether the instructions as a whole were prejudicial. *Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292, 301 (2001). A trial court is not required to use any particular jury instructions, or particular forms of expression, so long as those instructions clearly and accurately characterize relevant law. *Id.*

34

*Commonwealth v. Carson*, 913 A.2d 220, 255 (Pa. 2006). Here, the instructions as a whole were not prejudicial to the Appellant. The important instruction that was conveyed to the jury on both occasions was that the court emphasized and repeated twice "You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt." Appellant's claim is meritless.

## CONCLUSION:

For the foregoing reasons, the Trial Court's Judgment of Sentence should be affirmed on appeal.

BY THE COURT:

_____
JAMES F. NILON, JR.,   J.

2016 MAY 17 AM 9: 33
OFFICE OF JUDICIAL SUPPORT
DELAWARE
FILED